(3 App. Div. 235.)

## VALENTINE v. SCHREIBER.[1]

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. EASEMENTS—CREATION—AGREEMENT TO OPEN STREETS.

　　Where plaintiff and his grantor agreed, in writing, to open certain streets and highways through their property, and provided that each party should have free access to and use of such streets and roads for himself and his grantees, without waiting for the acceptance of the same by the town as public highways, the fact that there was no regular dedication and acceptance does not affect plaintiff's right of way in such roads.

---

[1] Motion for reargument denied. See 38 N. Y. Supp. 1150.

2. SAME—CONSTRUCTION OF GRANT.

An agreement between plaintiff and his grantor that they should lay out certain roads along and across their adjoining premises, and that each party thereto should have free and unrestricted right of access to the said roads, is equivalent to an express grant of right of way to plaintiff.

3. SAME—GRANT BY EXECUTORS.

Executors and trustees under a will with power to sell, may, in carrying out the provisions of the trust, convey an easement in favor of lands already sold, when such conveyance appears distinctly advantageous to the estate.

4. SAME—EFFECT OF GRANT.

Under an agreement between plaintiff and his grantor that they will lay out certain streets and highways, and that each party and his grantees are to have free access to and use of such streets or roads for access to and egress from their own lands, the right of way thus granted is not an easement personal to plaintiff, but is appurtenant to the lands he then owned; and, on purchasing other lands lying near the roads, he has right of way over them to such tracts.

5. SAME—CONVEYANCE OF LAND AND APPURTENANCES.

A conveyance of lands and appurtenances carries with it an easement created under an agreement between plaintiff and his grantor to open certain roads and that the parties shall have free access to and use thereof.

6. SAME—ABANDONMENT—NONUSER.

Mere nonuser, without intention to abandon, will not operate as an abandonment of an easement.

7. TRESPASS—CONTINUING TRESPASS—EQUITABLE RELIEF.

In an action to enjoin defendants from trespassing on plaintiff's land, proof that the trespasses were repeated and continuous will justify the court in granting the equitable relief.

Appeal from special term, Queens county.

Action by Benjamin E. Valentine against Henry Schreiber to recover damages for obstruction of plaintiff's right of way, and to enjoin further interference. There was judgment for plaintiff, and defendant appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Byron Traver and Davies, Stone & Auerbach, for appellant.
Benjamin E. Valentine, in pro. per.

CULLEN, J. One Samuel Wood, at the time of his decease, was seised and possessed of a tract of land at Woodsburgh, which he devised to his executors and trustees upon certain trusts, and also empowered his executors to sell and convey the same. On November 7, 1885, the executors and trustees of Samuel Wood conveyed to the plaintiff a tract of land fronting on the Woodsburgh boulevard and Franklin avenue. This conveyance cut off from access to the boulevard and Franklin avenue a tract of which the trustees remained the owners, lying in the rear of the tract conveyed to the plaintiff. For this reason the deed to the plaintiff contained a provision authorizing the grantors to extend another street, called "Neptune Avenue," through the premises conveyed, upon conveying to the grantee an equivalent amount of equally desirable land. The rear plot, which remained in the ownership and possession of the trustees, is called the "20-acre lot." In July, 1886, the plaintiff and the trustees of Samuel Wood executed the following agreement:

"This agreement, made by and between Edward T. Schenck and Alfred L. Simonson, as surviving executors of and trustees under the will of Samuel Wood, deceased, parties of the first part, and Benjamin E. Valentine, party of the second part:

"Whereas, said parties are owners of real estate at Woodsburgh, in the town of Hempstead, L. I., which is adapted for villa sites, but which has not yet been suitably opened by roads and streets; and whereas, the parties are desirous of making such agreement in relation thereto as shall be advantageous to the premises of both: Now, therefore, the parties, in consideration of their mutual undertakings, agree as follows:

"(1) Said parties of the first part agree that the highway known as 'Franklin Avenue' may be extended on the northerly line thereof, where it passes through their premises, by increasing its width to a uniform distance of 60 feet, as adopted for other streets on the Wood estate.

"(2) Said Valentine agrees that he will, at his own expense, build a fence of cedar along said northerly line, opposite his dwelling, like the fence on the southerly side of said Franklin avenue.

"(3) Said parties of the first part agree that they will dedicate, and that said Valentine may open, for the purposes of a public highway, having a width of 60 feet, a road through and along the northerly line (or at a distance of 1 foot therefrom) of their lot, adjoining premises of said Valentine, known as the '20-acre lot of the Wood estate' and designated on the annexed diagram by the letter 'A.' This dedication and opening is to be without expense to the parties of the first part, except for such surveyor's fees and other disbursements as may be reasonably required for fixing the boundaries, and for maps, etc.

"(4) Said Valentine agrees that the parties of the first part shall have a roadway and right to open a road 60 feet in width from the westerly terminus of said last-named road, over the premises of said Valentine, designated on the annexed diagram by the letter 'B,' substantially as indicated on said diagram, to connect the said road from the 20-acre lot of the Wood estate with said Franklin avenue or Sixth street. This to be taken in lieu of and as a substitute for the provision in deed of the parties dated November 7, 1885, permitting the opening of Neptune avenue by the parties of the first part through land of said Valentine. And as an equivalent for the land of said Valentine so surrendered to the parties of the first part for said road, the parties of the first part agree to convey to the said Valentine that portion (of block 41, as shown on the map of Woodsburgh, filed in the Queens county clerk's office) lying between boulevard, Sixth street, and Franklin avenue, which is designated on the annexed diagram by the letter 'C.'

"(5) Each of the parties hereto is to have the full and unrestricted right and privilege of access to and uses of all and every of said proposed roads and ways, and all parts thereof, for access to and egress from any and all of their own lands lying near the same, and for the use of their survivors or grantees of any of the said premises, without waiting for the acceptance of the same as public highways by the town authorities.

"Witness our hands and seals this 26th day of July, 1886."

After the execution of this agreement the plaintiff created and constructed a roadway through his own property from the 20-acre lot to the highway (Franklin avenue), and also a roadway along the whole north line of the 20-acre lot. The evidence showed that the defendant, who seems to have gone into possession of the 20-acre lot, in 1893 and 1894 used the part of the roadway on plaintiff's land to store his wagons and farming utensils, and obstructed, plowed up, and destroyed the roadway over the 20-acre lot. This action was brought for damages, and to restrain the defendant's trespass on the plaintiff's land and his obstructing and injuring the road over the 20-acre lot. The special term rendered judgment for the plaintiff for six cents damage, and enjoined the defendant as prayed for in the complaint.

The only objection raised to that part of the judgment which enjoins the defendant from trespassing on the plaintiff's land is that he should have been remitted to his action at law. The answer to this is that the trespasses were repeated and continuous, and this is a good ground for equitable relief. Broiestedt v. Railroad Co., 55 N. Y. 220.

The serious attack, however, on this appeal, is directed against the relief granted plaintiff as to his roadway or right of way over the 20-acre lot. It is denied that, at the time of the commencement of the action, the plaintiff had any right whatever in the roadway. As many objections are raised against such right, it will be necessary to discuss them seriatim.

First, it is said that the agreement created no valid dedication of the roadway across the 20-acre lot. This may be conceded, but it is immaterial to the disposition of the case. Granting that the roadway never became a public highway, still the provisions of the agreement are express:

"Each of the parties hereto is to have the full and unrestricted right and privilege of access to and uses of all and every of said proposed roads and ways, and all parts thereof, for access to and egress from any and all of their own lands lying near the same, and for the use of their survivors or grantees of any of the said premises, without waiting for the acceptance of the same as public highways by the town authorities."

There is no force in the objection that this clause does not use the word "grant," or purport in express words to grant to the parties a right of way. It is settled law that easements may be created by agreements or covenants that one shall have a right or privileges in the estate of another, as well as by express grants. Such agreements are grants in effect. Washb. Easem. (4th Ed.) 43; Stetson v. Curtis, 119 Mass. 268; Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303.

The validity of this agreement is next challenged on the ground that the trustees under the will of Samuel Wood had no power to execute it. To support this claim is cited the rule, often stated, "that no one can grant an easement out of land, in favor of another, unless he has entire interest in the soil." Washb. Easem. 46. I am frank to say that I do not understand the exact meaning of the doctrine thus pronounced. If it be intended to assert that no one can grant an easement greater in extent or duration than can be carved out of the estate which the grantor has, the rule is plain, and unquestionably sound. But if it is intended to go further, and assert that no easement, valid as against any person, can be granted except by the owner of the entire fee, I think it is unsound. Then, in Crippen v. Morss, 49 N. Y. 63, where one of several tenants in common granted an easement to a third party, it was held that such grant was invalid only as to the other tenants in common. I certainly can see no reason why a life tenant cannot create an easement, extending during his life, as well as convey the land itself, or a part thereof, for the same period. The will of Samuel Wood devised his residuary estate, which includes these lands, to his executors, and directed them to collect and receive the rents, and apply them for the purposes of the trust created by the will. Many of these trusts were annuities. On

this appeal the validity of the trusts created by Samuel Wood's will has not been challenged. Therefore, we shall not discuss them. The provisions of the will we have referred to created an active trust, and the trustees have the legal title to the lands during the life of the trust. It was not shown that these have terminated.

I think the authority of the trustees to execute this agreement can also be upheld under the power of sale granted to them by the will. The lands were villa property, and could be best sold by division or subdivision into villa lots. For this purpose it was necessary they should have access to the highway. The agreement was beneficial to the estate, and was so found by the trial court. I can see no more objection to the execution of such an agreement with Valentine than the laying out of streets on the land itself, and selling lots on such streets, by which purchasers of the lots would obtain easements in the streets. If such were the advantageous way of disposing of the property, the trustees had the power to adopt it, even though, as to the lands unsold, they would create easements in favor of the lands they might dispose of.

I agree with the counsel for the defendant that the grant of the right of way was not a grant in gross, personal to the plaintiff, but appurtenant to the lands he then owned. The agreement provides that the parties shall have the use of the proposed roads "for access to and egress from their own lands lying near the same, and for the use of their survivors or grantees." The general rule is that a grant in gross is never presumed when it can be fairly construed as appurtenant to some other estate (Washb. Easem. 45), and certainly the language of the agreement supports the latter construction (Huntington v. Asher, 96 N. Y. 604). The plaintiff still holds the premises then owned by him. He has since purchased a tract on the north of the roadway across the 20-acre lot. As owner of this last tract, he may have no right to use the road, but as owner of the first parcel he has the right to use it to go to the last purchase, or to any other point where he may be able to obtain exit. It will be seen, from the relative positions of the property of the plaintiff and the 20-acre lot, that the roadway over the 20-acre lot was not necessary, nor could it be used as a means of obtaining access from plaintiff's lot to the highway. This part of the roadway was a mere cul de sac. When, therefore, the plaintiff was granted a right of way over it, he was entitled to go over it to any highway, or to any property which he might either have owned or have permission to go over. In other words, he was entitled to go over it to any point where he could find an exit, and a similar right to return; and the new purchase neither increased nor diminished his rights in this respect, nor did it increase the extent of his grant.

It is further claimed that the plaintiff has lost whatever right he had under this agreement with the trustees. The first ground of this claim is that, before the commencement of the action, he conveyed the lands he had first purchased to one Elizabeth H. Valentine, who, in turn, reconveyed to him, and that in neither conveyance was there, in terms, any grant of the right of way. We think it entirely clear that the right of way passed to the grantee in these conveyances un-

der the term "appurtenances," as appurtenant to the land conveyed. This is the general rule of law. 3 Washb. Real Prop. 394. The cases cited by the defendant's counsel are not in point. The question involved in those cases is whether, by the conveyance, there was an implied grant of an easement in other lands of the grantor,—a question entirely different from that presented here. The settled rule is:

"All easements, properly so called, to which a landowner has a right in the soil of a third person, will pass to the grantee of the land under the general words of conveyance, 'together with all easements and appurtenances,' and even if the word 'easements' is omitted, the word 'appurtenances' is sufficient to carry those rights." God. Easem. 71.

As the plaintiff acquired his easement by grant, his title would not be affected by a nonuser, unless accompanied with an intention to abandon the easement. Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896. We think that the evidence did not conclusively establish such intention.

The judgment appealed from should be affirmed, with costs.

BROWN, P. J., and BARTLETT and HATCH, JJ., concur.

PRATT, J. (concurring). This controversy relates to what has been called, but what seems to me to be rather proved to be, a right of way claimed by plaintiff over lands which defendant claims under a lease. The plaintiff's claim is founded upon the act of the trustees under the will of Samuel Wood, the common source of title. Wood owned all the land in his lifetime, and made and filed a map indicating that he contemplated opening certain streets or roads through his land. The trustees conveyed a part of the land owned by their testator to plaintiff in 1885, bounding the same in part by a highway known as "Brower Point Road," which, on the map, was called "Franklin Avenue." The first point in the description in this conveyance is at a point on this road (Franklin avenue) "opposite the northerly line of Neptune avenue as now opened." The parties to that grant plainly contemplated the opening of other roads or streets; for it contained a provision that if the grantors, within two years after their grant, should decide to extend said Neptune avenue through the premises conveyed, they should have the right to do so, by conveying to plaintiff an equivalent amount of other equally desirable land to compensate for that so taken for the said street, and complying with other terms. Thereafter, and within said two years, the grantors decided to extend this Neptune avenue, and made arrangements with plaintiff, pursuant to the reservation in his deed, for that purpose. They accomplished this object by means of two instruments. One of them was an agreement under seal, which provided the terms of the opening of the road through the land conveyed to plaintiff in 1885, and specified the land which the trustees should convey to him in lieu of that which they took for the extension of Neptune avenue. The other was a new conveyance of land in lieu of that taken for the Neptune avenue extension. This agreement clearly shows that the parties contemplated that the roads which they there specified should ultimately become highways, but

that, in view of the fact that the offer of dedication for that purpose must be accepted by the public before the roads should become lawful highways, they provided that each should have "full and unrestricted right and privilege of access to and uses of all and every part of said proposed roads and ways, and all parts thereof, for access to and egress from any and all of their own lands lying near the same, and for the use of their survivors and grantees, * * * without waiting for acceptance by the town authorities." The new proposed road was indicated on the said map, and appropriated part of plaintiff's land, leaving the balance included in the angle formed by the old Brower Point road (Franklin avenue) and the proposed road. The land appropriated from plaintiff's lot was marked "B" on the map. The proposed new road then ran on beyond plaintiff's land, and on one side of premises owned by the trustees; this extension being marked "A" on the map. The two strips, A and B, furnished means of access to one of the trustees' lots which was otherwise inaccessible from the old Brower Point road (Franklin avenue). The plaintiff at that time did not own any land along the strip A, and the letter of the latter clause of the agreement would seem to limit the use of the strips A and B, until acceptance by the public, to the purposes of "access to and egress from any and all their own lands lying near the same." Strictly speaking, this would seem to limit the plaintiff's use of the proposed new road to the part marked "B," but would give to the trustees the right to use both B, and its extension, A. But I do not think that is the true construction in view of other clauses of the agreement. The plaintiff had the right, under this agreement, to "open, for the purposes of a public highway, having a width of 60 feet, a road * * * designated on the annexed diagram by the letter 'A.'" In other words, the plaintiff thereby acquired just as good right to open the strip A, and keep it open, through the land of the trustees, as they had to open the strip B through his land, and keep it open. It is quite too much to assume that he should not, under these circumstances, have the right to use the strip A, although he did not, at that time, own land lying thereon. Non constat he then contemplated doing just what he subsequently did do, namely, buying land from other parties along the strip A, opposite the trustees' land. This was followed by his actual use for several years of the entire strips, A and B, for access to his subsequent purchase, and evinces a practical construction between the parties to the agreement of his rights thereunder. We therefore reach the conclusion that one of the objects of this so-called road agreement was to give plaintiff and his grantees a right of way over the entire strips, A and B, at his will and pleasure, and especially so after his subsequent purchase along the strip A.

We may now obtain a clearer view of defendant's contention that this road agreement was not within the power of the trustees under the will of their testator. I think it was within those powers for two reasons. In the first place, this road agreement was really a part of the original grant by the trustees to plaintiff. It was made in pursuance of a reservation contained in that grant, and the trustees had just as much right to exercise their option, thus reserved,

and agree with plaintiff upon the terms thereof, as they had to make the grant itself. The latter right is not controverted. In the next place, the trustees evidently deemed that this proposed road, when accepted by the public, and the private right of way thus in the meantime obtained by them over plaintiff's land from the junction of Neptune avenue and the old Brower Point road (Franklin avenue) to their lot lying along the strip A, was beneficial to the trust estate. We have no difficulty in seeing that it was beneficial to the estate. Certainly, the learned trial judge was justified in such a finding by the evidence before him, and that would seem to satisfy the requirements of the will.

We do not understand that defendant's landlord, or the defendant himself, each of whose rights are subsequent to the plaintiff's, claim any right under the registry act. The only ground upon which the defendant claims the right to shut up this strip, A, are the want of power in the trustees to make this road agreement, and a theory of abandonment of the plaintiff's right of way. I do not think the theory of abandonment is well founded.