In the Matter of the Application of The City of New York,
Relative to Acquiring Title in Fee Wherever the Same Has Not
Been Heretofore Acquired, to the Lands and Premises Required
for the Purpose of Opening and Extending Lafayette Avenue,
from Flatbush Avenue to Fulton Street in the Eleventh Ward,
Borough of Brooklyn, City of New York.

Supreme Court, Kings Special Term, February, 1922.

Eminent domain — street opening proceeding — easements — eighteen-
foot strip used by abutting owners as courtyard — when owners entitled
to substantial damages for taking of strip — abutting owners who have
abandoned the courtyards and erected business buildings not entitled
to substantial awards — no award for loss of right to maintain vaults
constructed under revocable license even where claimants show fee in
street — courtyard rights appurtenant to land and pass with title —
amount of awards.

The term. " courtyard," which is a corrupted form of " curtilage," signifies a
space of land about a dwelling house, which not only might be inclosed, but
within which appurtenant buildings and structures might be erected.
A statute (Laws of 1852, chap. 31, § 1) authorizing the city of Brooklyn to
open or lay out or take by cession a certain avenue as laid down on a map
of property belonging to the heirs of J., showing a street ninety feet wide, after
providing that the carriageway should be thirty feet wide and the sidewalks
twelve feet wide, declared that the remaining eighteen feet on each side should
be inclosed, used and maintained as courtyards.  Held, that where within a
month after the enactment of the statute, the then owners of nearly all the lands
fronting on the portion of the avenue affected by the statute, by a deed reciting
the statute, ceded to said city such land, the deed must be regarded as having
been given and accepted to carry the statute into effect and as conveying the
land for the purpose and subject to the conditions named in the statute, and
the fact that the courtyard spaces were actually inclosed and used as courtyards
supports such conclusion.
About the year 1839 the heirs of J. caused the farm owned by them to be laid
out into blocks and lots and the map referred to in the statute to be prepared
and in all deeds given prior to 1852 the parcels conveyed were described as front-
ing on the avenue as shown on said map, and for nearly fifty years there was uni-
versal acquiescence in the statutory plan.  Held, that private easements of right
of way over the land within the courtyards had long since been extinguished,
and there was no substantial basis for the city's claim that to the owners of
abutting premises the courtyards were only of nominal value.
The courtyard privilege was a valuable one to the owners along the avenue entitling
them to maintain stoops, balconies and bay windows above the surface, and
areaways, coal cellars and vaults below, and the city, whatever its general
powers with respect to the laying out and regulation of streets, was bound by
the statute.
The property owner's rights, which were in no way dependent upon ownership
of the fee of the street, but rested upon the statute of 1852, constitute eastments
which passed upon a conveyance of the premises to which they were appurtenant,
and the abutting owners, in condemnation proceedings, were entitled to an
award of substantial damages because of the deprivation of their right to the
use of the courtyard spaces.

11

Where, however, abutting owners have erected new buildings for business purposes or have entirely changed the character of the old buildings, so as to use them for business, and in doing so have removed all evidences of the courtyards and carried the sidewalks up to their buildings, no award can be made for a loss of the right to maintain vaults under the sidewalk, which were constructed under revocable licenses.

Those owners who commenced the alteration of their buildings for business purposes after the institution of the condemnation proceedings but before the vesting of title, are entitled to the same awards which they would have received had the premises continued in their former condition until the title thereto vested in the city.

Awards made to abutting owners for loss of courtyard easements and in addition an award of nominal damages to the owner of the fee of each damage parcel and in each case where the present abutting owners can show a complete chain of title from one of the heirs of J., through mesne conveyances each sufficient to transfer title to the fee of the street, an additional award of twenty-five cents a running foot.

The owners of the business buildings on the line of the improvement involved in the present proceedings, who have constructed vaults in connection therewith, are not entitled to substantial damages by reason of the taking of such vaults, even if they can show title to the fee of the street.

Condemnation proceedings.

*John P. O'Brien*, corporation counsel (*Howard M. Campion*, assistant corporation counsel), for the City of New York.

*David Joyce*, for claimant damage parcel No. 4.

*John A. Thompson*, for claimant damage parcel No. 5.

*William H. Good*, for claimant damage parcels Nos. 7, 29.

*Duncan & Campbell* (*Bruce R. Duncan*, of counsel), for claimants damage parcels Nos. 8, 30, 34, 45.

*William Howell Orr*, for claimant damage parcel No. 27.

*Lynn G. Goodnough* (*Augustine S. Hart*, of counsel), for claimants damage parcels Nos. 31, 32, 71.

*Snedeker & Snedeker* (*E. L. Snedeker* and *Bruce R. Duncan*, of counsel), for claimants damage parcels Nos. 41, 42, 72.

*Bassett, Thompson & Gilpatric* (*W. W. Thompson*, of counsel), for claimants damage parcel No. 55.

*George W. I. Dwinell*, for claimant damage parcel No. 43.

*Henry A. Ingraham*, for claimant damage parcel No. 61.

Benedict, J. This is a proceeding which, as its title indicates, was begun by the city of New York " relative to acquiring title in fee, wherever the same has not been heretofore acquired, to the lands and premises required for the purpose of opening and extending Lafayette Avenue from Flatbush Avenue to Fulton Street," in the borough of Brooklyn. The total number of parcels affected, as shown by the damage map, is eighty-two; but of this number

damage parcels 1, 3, 11 to 26 inclusive, 36, 37, 46 to 54 inclusive, 56, 63 to 70 inclusive, and 73 to 80 inclusive will receive only nominal damages, because the city has already acquired easements for street purposes in them, and hence the acquisition of title in fee involves only an award of nominal damages to the property owners.

The principal question is whether the owners of the premises fronting on that portion of Lafayette avenue affected by this proceeding are entitled to substantial damages or only to nominal damages because of being deprived of the use of so-called " courtyard " spaces, which extended eighteen feet from the building line on either side toward the center of the street.   The origin of these courtyards, and of any rights of the abutting owners therein, is found in section 1 of chapter 31 of the Laws of 1852, which provided for the opening of that part of Lafayette avenue, as laid down on a map of property belonging to the heirs of John Jackson, deceased, lying westerly of Fulton avenue (now Fulton street). The common council of the city of Brooklyn was authorized to open or lay out the street or to take it by cession.   The map in question showed Lafayette avenue as a street ninety feet wide. It was further provided as follows:   " The carriage way of said street shall be thirty feet wide, the sidewalks twelve feet, and the remaining eighteen feet on each side shall be enclosed, used and maintained as court yards."   This act became a law and went into effect on February 23, 1852.   By deed dated March 22, 1852, and recorded December 6, 1852, Kimball P. Colfax and others, constituting the then owners of nearly all the lands fronting on the portion of Lafayette avenue affected by the statute, ceded the lands lying therein to the city of Brooklyn.   This deed recited the statute and must be regarded as having been given and accepted to carry the statute into effect, and as conveying the land for the purpose and subject to the conditions named therein, a conclusion which is further supported by the fact that the courtyard spaces were actually inclosed and used as courtyards for many years.

Prior to the act above mentioned, and about 1839, the heirs of John Jackson caused the farm owned by them to be laid out into blocks and lots and a map thereof to be prepared, being the same map referred to in the statute.   Afterward partition deeds were given among the heirs describing certain of the parcels conveyed to one or another as fronting on Lafayette avenue as shown on said map, and thereafter and prior to 1852 a number of parcels were conveyed to others by similar descriptions.   This, it is claimed, vested in the grantees in such deeds and their successors in title private easements of right of way over Lafayette avenue as a street

ninety feet wide; and, it is urged, the act of 1852 could not deprive them of such rights. The deed of cession is a complete answer to this contention so far as the grantors therein and their successors in interest are concerned, for they thereby relinquished any private easements of right of way which they may have had over the courtyard spaces to accept the plan proposed by the statute. They appear to have owned all the property concerned except three lots at the northwest corner of Lafayette avenue and St. Felix street, which had been conveyed by Christiana A. Peters, one of the Jackson heirs, to one Robert Carse in 1847. So far as appears from the evidence he still owned these lots at the time of the cession and he did not join therein. There was, however, universal acquiescence in the statutory plan for nearly, if not quite, fifty years. It follows that any private easements of right of way over the land within the courtyards have been long since extinguished. There is, therefore, no substantial basis for the city's claim that the courtyards were only of nominal value to the owners of the abutting premises because of such easements of right of way.

The next question is for what purposes the courtyards might be used. The term " courtyard " is a corrupted form of " curtilage " and means the same thing (12 Cyc. 1021; 3 id. 988, notes 29, 31; *Coddington* v. *Dry Dock Co.*, 31 N. J. L. 477, 485); and the definitions of that word clearly indicate that it designated a space of land about a dwelling house which not only might be inclosed, but within which appurtenant buildings and structures might be erected. 12 Cyc. 1021; *Cary* v. *Thompson*, 1 Daly, 35, 38; *People* v. *Parker*, 4 Johns. 424; *People ex rel. Murphy* v. *Gedney*, 10 Hun, 151, 154; *Coddington* v. *Dry Dock Co.*, *supra;* Shep. Touchstone, 94. This courtyard privilege was, therefore, a valuable one to the property owners along Lafayette avenue between Flatbush avenue and Fulton street. It entitled them, in my opinion, to maintain stoops, balconies and bay-windows, above the surface, and areaways, coal cellars and vaults below.

It is urged in substance by counsel for the Academy of Music, who oppose all awards other than nominal, that to hold that the courtyards were available under the act of 1852 for structures appurtenant to dwelling houses on abutting premises, such as stoops, bay-windows, etc., would render the act unconstitutional, as authorizing the taking of private property for other than a public purpose, and *Matter of Clinton Avenue*, 57 App. Div. 166; affd., 167 N. Y. 624, is cited in support of this contention. This case seems to me, however, to support exactly the opposite view, for the Clinton avenue courtyard act (Laws of 1899, chap. 257) expressly authorized the abutting owners to use the courtyard

space, subject to certain restrictions, "for stoops, porches and piazzas * * * and for steps and approaches to a house * * * and for such other purposes as are usual and proper for a plot fronting on a street and appurtenant to a residence, hotel, apartment house or other dwelling house." This act was held constitutional.

Certain cases cited in support of the proposition that the abutting owners have no right to use the courtyards for stoops, approaches, areaways and other projections appurtenant to their dwelling houses may here be noticed. In the case of *Matter of Curran*, 38 App. Div. 82, the building which the petitioner proposed to erect upon the courtyard space was apparently not a mere appurtenance to his dwelling house, but a separate building or an extension of the building on the abutting premises. In *Linton* v. *Coupe*, 138 App. Div. 518, the courtyards were maintained only by municipal authority. In the present case the power of the municipality to permit encroachments on lands devoted to public use is not involved. Lafayette avenue, as a public street, had its origin in the act of 1852, and the cession in pursuance thereof, and to permit the use of part of the lands for courtyards, and the maintenance of appurtenant structures thereon was clearly within the powers of the legislature, as is evidenced by the *Clinton Avenue Case*, *supra*. In the present case also there has been a practical construction of the act of 1852 in favor of the abutting owners' claim of right to maintain stoops and other appurtenant structures in the courtyard space, the city of Brooklyn and the city of New York having recognized such right for over half a century.

There can be no question but that the city of Brooklyn, whatever its general powers with respect to the laying out and regulation of streets, was bound by the command of the statute of 1852. Nor were the property owners' rights in the courtyards, depending as they did upon a statute, and not upon an ordinance of the municipality, subject to be defeated by any action which the city of Brooklyn, or the city of New York as its successor, could take, except through condemnation proceedings and the payment of just compensation.

The rights of the abutting owners are in no way dependent upon ownership of the fee of the street. They rest upon the statute of 1852 and constitute easements which pass as appurtenances upon a conveyance of the premises to which they are appurtenant. See *Voorhees* v. *Burchard*, 55 N. Y. 98; *Newman* v. *Nellis*, 97 N. Y. 285, 292; *Colburn* v. *Marsh*, 68 Hun, 269, 275; affd., on opinion below, 144 N. Y. 657; *Valentine* v. *Schreiber*, 3 App. Div. 235, 240.

Supreme Court, February, 1922. [Vol. 118

As a result of these considerations, I hold that the abutting owners, except in certain cases to be hereinafter noticed, are entitled to substantial damages in this proceeding, because they are deprived of their right to the use of the courtyard spaces. In the cases where the abutting owners have erected new buildings for business purposes, or have entirely changed the character of the old buildings so as to use them for business, and in doing so have removed all evidences of the courtyards and carried the sidewalk up to their buildings, no award can be made for loss of the right to maintain vaults under the sidewalk. The curtilage was always land appurtenant to a dwelling, and within it might be erected only such structures as were used in connection with the dwelling. Accordingly when the dwellings on Lafayette avenue were destroyed or entirely made over into business buildings and vaults constructed underneath the sidewalk for business purposes only, as in the case, for example, of the Cadillac Building, the building of Dayton & Montgomery, or the Academy of Music, the owners lost the right to claim the courtyard privilege to protect their new vaults, constructed under revocable licenses, from being taken away by the city in case of need of the space for a public improvement. But this reasoning does not apply to structures within the courtyard spaces originally constructed for use in connection with dwelling houses on abutting premises, although such dwelling houses, at the time of the commencement of this proceeding or at the time of the vesting of title, may have been used in whole or in part for business purposes. In such cases, however, the damage for depreciation by reason of taking the courtyard space is much less, and the allowance for the expense of alterations cannot exceed the allowance in a case where the property continued to be used as residential property to the date of vesting title. Those owners who commenced the alteration of their buildings for business purposes after the institution of this proceeding but before vesting of title are entitled to the same awards which they would have received had the premises continued in their former condition until vesting of title.

Damage parcel 1a is not shown on the damage map separate from damage parcel 1, but was referred to separately in the testimony, and it includes, I assume, so much of damage parcel 1 as lies within eighteen feet of the building line on the north side of Lafayette avenue and is not included within the lines of Flatbush avenue or Rockwell place. The land now constituting damage parcel 1a as well as the whole of damage parcel 1, as originally laid out, lay within the lines of a street designated as Fulton street on the map of the Jackson heirs, above mentioned, the place of

which has since been taken by Flatbush avenue. Damage parcel 1a was not, therefore, subject to the courtyard privilege, for it was not in Lafayette avenue. Damage parcel 2, which was subject to the courtyard privilege, is so small that the damage to the abutting owner from the extinction of that privilege is merely nominal.

The awards which I shall hereinafter make to the abutting owners will be for their loss of the courtyard easements. In addition thereto there should be an award of nominal damages to the owner of the fee of each damage parcel. Generally speaking, I think that the abutting owners did not own the fee of the street. Such of the partition deeds among the Jackson heirs as have been submitted were not so drawn as to carry the fee of the street, which remained in the same undivided ownership as before; and I assume that the others were drawn in similar form. If any of the present abutting owners can show a complete chain of title from one of the Jackson heirs through mesne conveyances each sufficient to transmit title to the fee of the street, then such owner would own such an undivided interest in the fee of the street as originally belonged to the particular Jackson heir under whom the present owner claims. In each such case an additional award of twenty-five cents a running foot will be made to the abutting owner. Under the recent case of *Appleton* v. *City of New York*, 219 N. Y. 150, 166, ownership of the fee of the street does not give the right to maintain vaults under the sidewalk without consent of the proper municipal authorities, and accordingly I hold that, even if the owners of the business buildings on the line of the improvement involved in this proceeding, who have constructed vaults in connection therewith, can show title to the fee of the street, they are nevertheless not entitled to substantial damages by reason of the taking of such vaults.

With these explanations, I make the following awards: Damage parcel No. 2, $1; No. 4, $1; No. 5, $1; No. 6, $3,100; No. 7, $3,100; No. 8, $3,350; No. 9, $3,100; No. 10, $1 (if this property, which is vacant, were likely to be improved for residential purposes, I should regard the courtyard privilege as of substantial value, and the award is nominal because the property is deemed available for improvement only or mainly for business purposes); No. 27, $2,001 (parlor floor and basement used for business, courtyard fences removed and sidewalk extended into courtyard area); No. 28, $2,001 (substantially same conditions as in case of No. 27); Nos. 29–34 inclusive, each $3,100; No. 35, $1; Nos. 38 and 39, each $3,100; No. 40, $350 (premises altered and used chiefly for business; hatchway to cellar only remaining part of old projections into

courtyard space); Nos. 41 to 43 inclusive, $3,100 each; No. 44, $3,150; No. 45, $3,100; No. 55, $1; No. 57, $1,100 (no allowance for removing encroaching wall); No. 58, $775; No. 59, $830; No. 60, $750 (no structural changes involved); No. 61, $1,000; No. 62, $1 (new building all devoted to business); No. 71, $3,000; No. 72, $1,650 (by stipulation — building partly used for residential purposes); Nos. 81 and 82, each $1 (although building abutting on these damage parcels is partly used for residential purposes, the situation is such that I think the courtyard privilege adds no substantial value to the premises for residential purposes); Nos. 58 to 61 inclusive are partly devoted to business.

Let the corporation counsel prepare and submit in the usual form a tentative estimate of damages in accordance herewith.

Decreed accordingly.