FAIRFIELD FLORAL CO. v. BRADBURY.

(Circuit Court. D. Maine. April 19, 1898.)

1. INJUNCTION—MANDATORY—WHAT CONSTITUTES.
    Where a government officer has interrupted the usual course of business of his office, an injunction to prevent the continuance of such interruption, although it would incidentally compel the officer to do certain minor acts necessary in the ordinary course of business, is not mandatory.

2. SAME—CONSTITUTIONAL QUESTION—INJUNCTION PENDENTE LITE.
    Where an injunction is asked to restrain a government officer from continuing in a course of action, entered upon in pursuance of a federal statute, and the court on preliminary hearing is in doubt as to the constitutionality of the statute, a temporary injunction will issue when that appears to be the best way of doing justice pending the final hearing.

3. COURTS—DECISION BY COURT OF APPEALS—DIFFERENT CIRCUITS.
    In general, the courts of one circuit should follow the decisions of the court of appeals in another circuit, where the point in question has not been passed upon by the supreme court.

This was a suit in equity by the Fairfield Floral Company against W. J. Bradbury, postmaster at Fairfield, Me. The cause was heard on a motion for injunction pendente lite.

The Fairfield Floral Company was carrying on at Fairfield, Me., a business described in its circular advertisements as the "manufacture of artificial flowers," in the prosecution of which it received through the United States mails a very large number of letters, post-office money orders, and packages of merchandise; and it forwarded through the same channels large numbers and quantities of letters, circulars, and materials. The attention of the post-master general having been called to this business, he caused investigation of the same to be made, and became satisfied that it was so tainted with fraud as to make the matters and things so received and sent through the mails nonmailable under the statutes of the United States, and accordingly, by what is known by postal authority as a "fraud order," he forbade the transmission thereof by the post offices and mails. The postmaster at Fairfield was ordered to withhold from delivery all letters and packages coming to that office directed to the Fairfield Floral Company, and to pay no post-office money orders drawn in their favor. He was further directed to return to the senders, where they were known, all letters and packages received and directed to the Fairfield Floral Company, and to return to the dead-letter office all of which the senders were unknown. Pursuant to such direction from the postmaster general, the local postmaster refused payment of money orders, withheld delivery of the matters received, and returned letters and packages to the senders, or to the dead-letter office. The Fairfield Floral Company, after unsuccessfully demanding from the local postmaster delivery of all things received at his office and directed to it, and also after in vain presenting for payment post-office money orders drawn payable to it, brought its bill in equity, praying that the local postmaster be enjoined from so with-holding letters and refusing to pay orders. Upon motion, the court directed a restraining order to issue according to such prayer of the bill, and there-after, upon hearing of a motion, a temporary injunction was granted.

J. T. Boynton and William J. Haines, for complainant.

Isaac W. Dyer, U. S. Atty., for respondent.

PUTNAM, Circuit Judge (orally). The question whether or not this would be a mandatory injunction, if granted to the entire extent asked for, affords no difficulty. The post office department, through the postmaster at Fairfield, or, so far as we are concerned here, the postmaster at Fairfield, has interrupted the usual course of business, and the injunction is to prevent the continuance of that interruption. If, incidentally, this would compel the postmaster to perform some minor things which, in the ordinary course of business, he would per-form, this would not render it a mandatory injunction. This is well expressed in Lennon's Case, 166 U. S. 548, 556, 17 Sup. Ct. 658.

The statutes might have provided that the postmaster general, on evidence sufficient to him as to what was and what was not nonmail-able matter,—as to what matter in the mail formed a part of the al-leged fraudulent scheme of the complainant in this case,—should direct that such matter should not be delivered to the complainant. The statute might have provided—I do not say that it might constitution-ally, but it might have provided—that all matter which was properly nonmailable should be withheld, and that the postmaster general, or his subordinates, should determine, by some rules satisfactory to themselves, as to what was mailable matter and what was nonmail-able. It might have thus sought only to purge the mails from what, in the judgment of the officers connected with the post office department, was nonmailable. We would then have had the postmaster general dealing with what was explained by Mr. Justice Field in Ex parte Jackson, 96 U. S. 727, 733, to the effect that the United States have

no right of search or seizure without proper process, and therefore no right to open the mails to ascertain whether or not matter is mailable or nonmailable. And it is possible that the vesting a special discretion in the postmaster general to enable him to determine, as between mailable and nonmailable matter, might have been within the power of congress. On the other hand, congress might have provided—I do not say constitutionally provided, but it might have provided—that, on the conviction of a person for violating the post office laws by a jury, after a proper trial at common law, the court should have power, as a part of the penalty imposed upon him, to prohibit the use of the mails for a definite, or perhaps an indefinite, period of time. Congress might have done either one of these two things; and, if it had done so, we would have had a very different question from what we have with the statute as it now comes to us. The statute neither requires the verdict of a jury, nor does it discriminate between what is mailable and nonmailable. It enables the postmaster general to prohibit the delivery of a letter to the complainant corporation from the clerk of this court, notifying the corporation that it should appear to answer on its order, or a letter from the counsel of the corporation concerning its affairs, and, perhaps, of vital consequence to it. The statute also authorizes the postmaster general to prevent an honest debtor of the corporation, owing an honest debt, and desiring honestly to pay his debt, from using the mails for that purpose. So the provisions of the statute are very far-reaching, and recognize none of the discriminations which would be recognized if it had been of either class of legislation which I have supposed. As the statute stands, it practically enables the postmaster general to impose upon a person singled out by him according to the statute, for good reasons in his own opinion, a penalty beyond the proper subject-matter to which the statute relates.

If I were free to follow my own judgment, I should say that congress, neither directly, nor through the postmaster general or any one else, has any constitutional authority to impose the penalty of forfeiture of the use of the mails of the United States, at least without a trial. But I am not sure that I will be able to follow my own convictions in this case, even if on a final hearing they remain as they now stand. I am not sure that I will not be bound by the decision of the court of appeals in the Sixth circuit (Association v. Zumstein, 15 C. C. A. 153, 67 Fed. 1000), when the case comes to a final hearing. My own view is that the decisions of the court of appeals in one circuit should ordinarily be followed quite implicitly by the courts in other circuits. The case in the Sixth circuit does not seem to have been taken to the supreme court. I cannot find anything to indicate that it was taken up by writ of error or otherwise, and it seems to have been left on the decision of the court of appeals; so that it stands to-day the highest judicial authority which we have on the validity of the statute.

However, the case at bar, with the aid of the special orders which I propose to ask the parties to consent to, can be brought so quickly to a final hearing that I do not feel that equity justifies me in permitting this mail to accumulate meanwhile. Moreover, I must remember

87 F.—27

that the only ground on which I can now put the case, will probably leave it so that neither party can appeal from an order granting a temporary injunction, as the question is one of constitutionality; so that, whether I grant or refuse a temporary injunction, my decision would probably not be appealable to the circuit court of appeals, and must await a final decree before an appeal can be taken to the supreme court. I am satisfied that I can best do justice by following at present my own views of this statute, which I now regard as unjust and unconstitutional, and by expediting a final hearing of the case, reserving till then the question whether or not I am bound to follow the decision in the Sixth circuit.

Now, if the complainant can give the court to understand how rapidly it can expedite this case, I can give my conclusions on the motion for a temporary injunction. If the bill cannot be brought to a speedy hearing, I will simply let the restraining order stand; but, if the complainant will expedite the case, a temporary injunction will be granted as moved.