as the defendant was concerned, as proper and safe persons with whom to deal. When those persons brought to the defendant what they said were the papers they were to deliver, they came there with a certificate of character from the plaintiff, as persons with whom it was safe to deal, and who were to be trusted to deliver to the defendant, for the plaintiff, the securities which the defendant was to receive. Quigley & Tuttle, therefore, came to the defendant as persons in whom that trust and confidence might be reposed which careful dealers were in the habit of insisting upon before they advanced money to them upon collateral securities. When, therefore, they presented themselves at the counter of the defendant's bank, bringing what they said was the security which the plaintiff had agreed to receive, and what the plaintiff had advised the defendant it had agreed to receive, the only duty of the defendant was to give those papers, there presented, the same examination which it would have given to them, had they been presented by a person with whom it had made such a bargain on its own account, and in whom it reposed that trust which was an essential requisite to the making of these loans. If that duty was performed, then it was quite clear that the defendant was not guilty of negligence, although it might turn out that the obligations were not genuine, and although a careful examination might have enabled it to ascertain that fact. All the examination that it was required to give was such as was customary among bankers engaged in the same transactions under similar circumstances. Allen v. Bank, 22 Wend. 215, 225. That they did use such diligence was not in dispute, and, when the evidence was closed, the defendant was entitled that the verdict should be directed in its favor upon the undisputed facts. This precise point has been under examination in two cases in the courts of Great Britain which are called to our attention (Woods v. Thiedemann, 1 Hurl. & C. 478; Bank v. Synnott, 5 Ir. R. Eq. 595), in each of which the conclusion reached was the same as was reached here.

The principles laid down in this opinion dispose of the various objections and exceptions taken to the rulings of the court and upon the admission of evidence. For the reasons given above, we conclude that the judgment and order were correct, and must be affirmed, with costs to the respondent. All concur.

---

(25 Misc. Rep. 626.)

### CHAPMAN et al. v. SYRACUSE RAPID-TRANSIT RY. CO.

(Supreme Court, Special Term, Onondaga County. December, 1898.)

1. STREET RAILROADS—LEASE—WHAT CONSTITUTES.

     A contract for the passage of cars over a street railroad, of which the owner otherwise holds control, is not a lease, within Laws 1890, c. 565, § 78, authorizing contracts for the use of railroads, but providing that, if such a contract is a lease for more than one year, it shall not be binding, unless stockholders consent.

2. SAME—USE OF ROAD—RIGHT OF INTERFERENCE.

     Failure to pay compensation under a contract for the use of a street railroad does not authorize interference with the use.

**3. Same.**
That the terminus of the right of way has been slightly changed in the actual operation of a part of a street railroad, under a contract for its use, does not impair the right to enjoin interference with the use contracted for.

**4. Same—Rights of Co-Tenants.**
One co-tenant of a street railroad, bound not to let, sublet, assign, or convey any interest therein without the other's consent, could not convey a perpetual right to operate the cars of a third road over the common tracks, on the consent inferable from their operation for several years without complaint from the other.

**5. Same—Rights of Purchaser.**
A company which has acquired the interests of co-tenants of a street railroad may object to the exercise of an easement to which only one interest is subject.

**6. Same—Estoppel.**
Failure of a co-tenant of a street railroad to complain at once of the use thereof by a third road, which has acquired the right from the other co-tenant only, does not give rise to any estoppel in favor of the use.

**7. Same—Corporate Stock—Foreclosure—Interest of Purchaser.**
One who acquires stock of a street-railroad company by foreclosure of a mortgage takes it free from an agreement by the former owner, a street-railroad company, for a right of way for the company whose stock it purchased over a line it occupied in common with another, and to procure from its co-tenant such right of way, though such agreement was the consideration of the purchase by such former owner.

Action by George D. Chapman and others, as temporary receivers of the Syracuse & East Side Railway Company, against the Syracuse Rapid-Transit Railway Company, to perpetually restrain defendant from interfering with the use of its street-railway tracks, trolley wires, and electric power by plaintiffs and their successors, between the junction of Burnet avenue, Lock and James streets, and Railroad street, in Syracuse. Judgment for defendant.

W. G. Tracey and John W. Hogan, for plaintiffs.

W. P. Gannon, C. E. Spencer, and R. E. Drake, for defendant.

HISCOCK, J. On and prior to October 29, 1895, the Syracuse & East Side Railway Company, of which plaintiffs are now receivers, owned and was operating an electric street railroad between a point outside of the city of Syracuse and the corner of James street and Burnet avenue, in said city. Said last terminus was some distance from the center of the city, and was not very accessible or convenient. It also had, or claimed to have, the right and purpose to construct a line in East Water street, terminating near the center of the city, and near the point to which as a terminus plaintiffs are now running their cars over defendant's road. At the same time a street-railway corporation known as the "Syracuse Street-Railroad Company" was, in conjunction with another street-railroad company, and under certain rights and limitations as between said companies to be hereafter considered, the owner of and operating a double-track electric road between the terminus of said Syracuse & East Side Railway Company, at the corner of James street and Burnet avenue, and the proposed terminus of its proposed line in Water street, a distance of less than 1,000 feet. Defendant, by foreclosure and subsequent reorganization, has succeeded to and acquired the property of said Syra-

cuse Street-Railroad Company. Said Syracuse & East Side Railway Company had instituted proceedings under the statute to acquire the right to run its cars over the tracks of said other companies between said two points. Under such circumstances, and upon said October 29, 1895, an agreement was made between said Syracuse & East Side Railway Company and said Syracuse Street-Railway Company, under which it is claimed that said former road acquired the right to run its cars over the tracks now operated by defendant within the points before mentioned. By the terms of said agreement, said Syracuse Street-Railroad Company did "grant unto the party of the second part [said East Side Railway Company], its successors and assigns, the right to use, for the passage of its cars, the double-track street-railway tracks situated and located in James and Warren streets, in the city of Syracuse, commencing upon James street, at the intersection thereof with Lock street, and running thence westerly, upon James street, to Warren street; thence southerly, upon Warren street, to Water street and Hanover square, to the railway line of the second party at that point, so as to connect the railway tracks of said Syracuse & East Side Railway Company, at the intersection of Burnet avenue with Lock and James street, with its street-railway tracks in Water street and Hanover square, forming a continuous line for said Syracuse & East Side Railway Company to Water street and Hanover square." Said agreement also contained certain provisions by which the first party was to do certain work for the second party at its expense in making connections, and also provided that said second party was to pay the first party, the grantor, the sum of $2,000 for said property and rights so conveyed, and the sum of $500 annually during each and every year thereafter, for the maintenance and improvement of the tracks so used. It also provided that said contract should bind the successors and assigns of the respective parties, and should be deemed to cover and include any interest in the tracks so laid which was then owned, or might thereafter be acquired, by the party of the first part; and the compensation above provided for should be the only amount required to be paid by the second party for the use of said tracks and the maintenance thereof.

This contract was properly executed by the officers of the respective corporations, but there was no assent by the stockholders to it. Upon the foreclosure of the mortgage covering the property of said grantor, said Syracuse Street-Railroad Company, under which defendant acquired its tracks and property, said Syracuse & East Side Railway Company was not made a party, and whatever rights it acquired under said agreement have not, therefore, been cut off by that proceeding.

It is urged by the plaintiffs that this contract gave the East Side Company a perpetual right of way over the tracks in question, but that it was not a lease which, under the statute, being for more than one year, would require the consent of the stockholders, nor a "conveyance," in the ordinary meaning of the word of a right in the property, but that it was what might be called a "traffic contract," which was free from the necessity of consents of stockholders. The East Side road operated its cars under this agreement over the tracks

of said grantor only a short time before the latter went into the hands of a receiver and the foreclosure of the mortgage thereon was commenced. I do not think that a consent of stockholders, if it is necessary, can be inferred from user or other circumstances.

Defendant insists that the contract was a lease, and that, being for more than a year, it came within the provisions of section 78 of the railroad law (Laws 1890, c. 565), requiring the consent of stockholders thereto. Said law, by said section, provides that:

"Any railroad corporation or any corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation for the use of their respective roads or routes or any part thereof and thereafter use the same in such manner and for such time as may be prescribed in such contract. Such contract * * * shall be executed by the contracting corporations, under the corporate seal of each corporation, and if such contract shall be a lease of any such road and for a longer period than one year such contract shall not be binding or valid unless approved by the votes of stockholders owning at least two-thirds of the stock of each corporation. * * *"

The precise question at this point, therefore, is whether this "contract" by the Syracuse Street-Railway Company was a "lease" of its "road."

There is nothing in the wording of the instrument which is at all decisive, and we are remitted to an interpretation of the general meaning and scope of the statute. It may be helpful, in arriving at this, to consider the law as it was prior to the passage of the statute in question.

By chapter 218 of the Laws of 1839, it was provided that it should be lawful for any railroad corporation to contract "with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract." Under this statute there was no requirement for consents by stockholders, and the corporation had a right, without the same, through its directors solely, to make even a lease of its road. In view of this prior condition of the law, the restrictive provisions of the railroad law requiring the consent of stockholders are to be limited to a case plainly indicated. Such a case is one of a lease of a "road" for more than a year. The statute does not purport to cover every contract for the use of one company's road by another, even though for a longer period than one year. If it were the intention so to do, there would seem to be no propriety in providing generally for the making of these contracts, and then specially that if "such contract" should be a lease of any such "road," etc., the consent of stockholders should be obtained. The wording of this statute, and the other statute hereafter to be referred to, providing for enforcing a right of way by one company over another's road, lead rather to the conclusion urged by plaintiffs. They contend that, when the statute speaks of a lease of a "road," it means a lease of the entire road or an entire portion of a road, and that it does not cover a mere contract for passage of cars over a road of which otherwise the owner remains in possession and control. There, undoubtedly, is a distinction recognized by the courts between a lease or grant and a traffic contract. The statute invoked by defendant seems to have recognized

or created this distinction, and I shall hold that the contract made by the Syracuse Street-Railway Company with the corporation now represented by plaintiffs did not require the consent of stockholders.

Support is gained for this conclusion in this case from another statute relating to the operation of street railroads situated with reference to each other as the two in question were. Under section 102 of the railroad law, the East Side Railroad had the power to secure, by what amounted to condemnation proceedings, the right to run over the tracks in question for a distance not exceeding 1,000 feet, if the court should be satisfied, upon application, that such use was actually necessary to connect main portions of a line to be constructed or operated as an independent railroad, and that the public convenience required the same. The distance for which right of way was sought (and by the agreement in question granted) was less than 1,000 feet, and the other facts necessary to enable the court to grant a right of way existed, or were claimed to exist, at and before the time when said agreement was executed. Under such circumstances, an application was made by said East Side Railroad to acquire a right of way over said tracks. The Syracuse Street-Railway Company was a party to that application. With it pending, the agreement was made which covered and adjusted the subject-matter of the proceeding, and granted only what could have been secured by it if successful. The stockholders of the respective railroads were not required to be parties to that application, and I have no doubt that said railroads, through their directors and proper officers, could make a valid agreement, as they did, settling it, without bringing them in.

The bondholders and mortgage trustee of the Syracuse Street-Railway Company were not parties to, or in any manner subordinated to, said agreement, and the rights conferred by it might have been cut off by the foreclosure under which defendant holds the tracks in question, but this was not done. The East Side Railroad was not made a party to that suit.

It is claimed that the East Side Railway has not paid the compensation for the use of tracks, etc., provided by that agreement. This is disputed, but, assuming it to be so, it would not authorize defendant to perform the acts which are sought to be enjoined in this case.

Neither do I regard it as impairing plaintiffs' rights in respect to the subject-matter of the suit that the terminus of the right of way at the Water street end seems to have been slightly changed in the actual operation of the roads.

I come now to the consideration of the second question, whether the plaintiffs have a right of way, as against the Syracuse Consolidated Street Railroad, or as against defendant as its successor. It is undisputed that the Syracuse Street Railroad became the owner and operator of the tracks in question as tenant in common with said consolidated road. Prior to the execution of the agreement, receivers of said last road had been appointed, who seem to have continued in possession of its property until some time after October 29th, although such property had been sold upon mortgage

foreclosure in August. There is no question, however, that such successors occupied the position of the original corporation as to these tracks. The ownership and occupation of the two roads was subject to an express and valid restriction against the right of either "to let, sublet, sell, assign, or convey any interest in any portion of said railway intended to be held in common without the consent of the other." The agreement between the various individuals and parties, which preceded and led up to the final one of October 29th, fully recognized by its provisions for obtaining the consent of the consolidated road that a grant of rights, such as the Syracuse Street-Railroad then executed, came within this restriction. I have no doubt that it did.

It is not claimed that any express agreement was ever made by said consolidated road, or its representatives or successors, consenting to the grant made by its co-tenant, or in any manner giving said East Side road a right of way over the tracks. But it is insisted that the consolidated road and its successors have by their acts given the necessary consent. Assuming, for the present, that the agreement and grant which the Syracuse road made was valid and within its power to make, subject only to and needing the consent of the other road before becoming effective, I think such consent could be inferred and found from the acts of the representatives and successors of said latter road. September 16, 1895, the property of said road, including these tracks, had been conveyed upon foreclosure sale to the representative of a reorganization committee, which became effective June 29, 1896. Said committee conveyed the property to the defendant, which has ever since been in possession Receivers of the road operated it for some portion of this period. During all of this time the plaintiffs' road was operating its cars over the tracks. Those owning, operating, and interested in what had been the consolidated road must, upon the evidence, be assumed to have known of this. They never interposed any effective objection to it until about the time when this suit was instituted, in 1897. The court is justified in holding that such silence gave consent to whatever required only such consent to make it valid and binding.

But, as it seems to me, there is trouble with this grant and agreement of October 29th, when plaintiffs seek to apply it to the tracks in question, which is not cured by any such consent. The Syracuse and consolidated roads were co-tenants of these tracks, and, so far as appears, with equal interests. It is one of the essential parts and claims of plaintiffs' case that the agreement referred to gave a perpetual right to operate the cars of a third road over the common tracks. Only one of the co-tenants executed that agreement. It cannot be successfully argued that the restriction already quoted against one road making grants, etc., without the consent of the other, conversely gave the right to either road to make any sort of a conveyance of the common property upon a consent by the other such as has been proved in this case. That restriction must, in reason, be held to mean that neither co-tenant could make a conveyance, even though perfectly proper and valid, without the consent of the other. It can easily be understood how two roads, operating tracks

practically as partners, should provide against even the possibility of the substitution by one of a disagreeable successor by this provision for consent. But, so far as the original validity of a grant is concerned, it must be measured by the ordinary rules which would apply to the common property of co-tenants.

The right which plaintiffs claim to have secured of perpetually operating cars over the tracks in question, whether it be denominated in this case a traffic contract or by some other term, is, in effect, an easement which would be commonly described as a right of way. It can only be exercised at the expense and by the use of the common property undividedly held by tenants in common. The Syracuse Street Railroad, one of the tenants in common, could not, by its agreement alone, grant such right to be so exercised. It is, of course, well settled, as a general rule applying to real estate, that one tenant in common may, by as many grants as he pleases, divide up his estate and create new tenants in common. He may convey a quarter of his whole estate to one, an eighth to another, and a sixteenth to another. But he cannot convey, to the exclusion of his co-tenants, any specific part of the common property, and he cannot grant an easement greater in extent and duration than can be carved out of the estate which he has or which must be exercised at the expense of his co-tenant's estate. Adam v. Iron Co., 7 Cush. 361, 368, 369; Valentine v. Schreiber, 3 App. Div. 235, 239, 38 N. Y. Supp. 417.

It would, perhaps, be difficult for one railroad, owning and operating tracks in common with another, to carve out of and subtract from its rights and grant to a third company the easement of operating its cars over the common tracks. It is sufficient to say that the contract in question here made no attempt so to do. There is nothing in the contract made by the Syracuse Street Railroad to indicate that its right of using and operating cars over the tracks was in any way to be diminished by the extent to which its grantee, the East Side road, might operate its cars over them. But, under the grant, the latter, a third party, had the right to run all the cars it desired to over them. It needs no argument to demonstrate that this meant a new and substantial burden and incumbrance upon the tracks. As such, it could not be created by the act of one co-tenant. Crippen v. Morss, 49 N. Y. 63; Marshall v. Trumbull, 28 Conn. 183; Palmer v. Palmer, 150 N. Y. 139, 149, 44 N. E. 966; Edridge v. Railroad Co., 54 Hun, 194, 7 N. Y. Supp. 439.

As before stated, the consolidated road and its successors did not object to the operation by the East Side road of its cars over the common tracks for the period, October, 1895, to 1897. But this failure and acquiescence amounted to simply a license for the time being, and was not sufficient to create any permanent and irrevocable right. The present defendant has acquired the properties of both co-tenants, one subject to this easement and the other not. It is not prevented from standing upon the latter, and objecting to the exercise of the right of way, because it is at the same time the owner of the former, which is subject to it. Edridge v. Railroad Co., 54 Hun, 194, 7 N. Y. Supp. 439; Crippen v. Morss, 49 N. Y. 63.

Lastly, it is urged that the consolidated road became estopped from

questioning the rights now being enjoyed by plaintiffs; also that the defendant is likewise estopped, both as successor to such estopped predecessor and as the owner of certain stock in the East Side road, which was conveyed to the Syracuse Street road. The only argument of estoppel against the consolidated road is that for a period of some months it did not object to the use which was being made of its tracks; that, if it had, the East Side road would have acquired right of way by condemnation proceedings or otherwise, which now perhaps are not so open to it. Such facts are not sufficient to create such estoppel. The East Side road must be charged with knowledge that it had not properly acquired right of way against both roads (if the conclusion is correct that it had not), and it cannot complain simply because another, upon whose rights it was trespassing, did not at once complain.

The further contention of estoppel against defendant involves these details: At about the time of the agreement of October 29th, people apparently representing the Syracuse Street Railroad acquired substantially all of the capital stock of the East Side road. Part of the consideration of such acquirement was, in substance, an agreement for the right of way afterwards executed by the Syracuse Street Railroad, and also to assist in procuring a similar right of way from the consolidated road. Subsequently, said stock was transferred to the Syracuse Street Railroad, and has now passed, with other property of that corporation, to defendant. Plaintiffs insist that it has passed with the burden attached of carrying out the agreement of those who originally acquired it. Upon the contrary, it is held by defendant through a purchase upon the foreclosure of a mortgage against the Syracuse Street Railroad, whose lien was concededly prior and superior to the acquisition of the stock, and I am unable to see why it is not held like any other portion of the property so purchased, free, at least, from any merely personal contract made by the former owner.

The defendant, as at present constituted, represents through acquisition and reorganization plans, and stands upon the various interests and property rights formerly lodged in the stockholders and mortgage bondholders of both the Syracuse and consolidated street railroads, and, in my judgment, there are not facts sufficient to work any such estoppel as has been urged against it so situated.

These views lead to a judgment in favor of defendant. However, public interests and convenience are to some extent, at least, involved in the question, and opportunity will be given to counsel to apply for a stay of judgment for a reasonable time, and upon reasonable terms, pending proceedings to acquire right of way, if such are to be instituted.

Ordered accordingly.