[S. F. No. 7565. In Bank.—February 9, 1916.]

UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Petitioner, v. SUPERIOR COURT, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

INJUNCTION—PUNISHMENT FOR DISOBEDIENCE—MANDATE WHERE COURT REFUSES TO ACT.—In proper cases the superior court should cite and punish for disobedience to its orders, including injunctions, and mandate is the proper remedy where the court refuses to hear and decide such contempt proceedings.

ID.—APPEAL AS STAY.—An appeal does not stay the operation of a preventive injunction, but does stay the operation of a mandatory injunction.

ID.—EQUITIES WEIGHED IN GRANTING AND INTERPRETING TEMPORARY INJUNCTION.—Equities are weighed in granting or refusing a temporary injunction, and are to be considered in interpreting it.

ID.—CONTINUOUS TRESPASS—DIFFICULTY OF ASCERTAINING DAMAGES—MULTIPLICITY OF SUITS.—It is one of the peculiar provinces of equity to restrain and forbid by injunction repeated acts of trespass, where the loss sustained is difficult of admeasurement, and the legal redress involving a multiplicity of suits is wholly inadequate.

ID.—RESTRAINING TRESPASS—PROHIBITORY.—An injunction restraining trespass is not mandatory, but strictly prohibitory, within the language of section 3368 of the Civil Code and within the explicit definition of an injunction found in section 525 of the Code of Civil Procedure.

ID.— STREET RAILROADS — USE OF JOINT TRACKS BY RAILROAD CORPORATION AND MUNICIPALITY—NOT STAYED BY APPEAL.—In an action by a street railroad company against a municipal corporation operating a street railroad system, the injunction granted against the municipality against operating its cars over a portion of track, and by means of poles and wires, owned by them jointly and over a terminal loop owned exclusively by the plaintiff company, in numbers in excess of the provisions of a contract between them providing for a joint operation of cars on the track and loop, is in its essence prohibitive and restrains continuous acts of trespass upon plaintiff's property, and as such is not stayed by appeal.

ID.—REVIEW ON APPEAL.—When the character of an injunction is presented to a higher court for review, that tribunal, in the exercise of its equitable jurisdiction, seeks first to ascertain the nature and adequacy of the relief granted.

ID.—PROHIBITIVE INJUNCTION INVOLVING INCIDENTAL AFFIRMATIVE ACT. The character of a prohibitive injunction is not changed because it incidentally involves the doing of an affirmative act.

APPLICATION for Writ of Mandate directed against the Superior Court of the State of California, in and for the City and County of San Francisco, and George E. Crothers, one of the judges of said Superior Court, presiding in Department No. 1 thereof.

The facts are stated in the opinion of the court.

Wm. M. Abbott, and Wm. M. Cannon, for Petitioner.

Matt I. Sullivan, and Geo. Lull, for Respondents.

HENSHAW, J.—The United Railroads brought its action to enjoin the city and county of San Francisco, operating a municipally owned electric street railway, from using a portion of its tracks, poles, and wires owned in common with the

municipality, and of its terminal loops owned by it exclusively, with cars in excess of the number which plaintiff contended defendant was entitled under contract to use. The trial court granted an injunction *pendente lite,* in terms requiring the defendant to desist and refrain from operating this excess number of cars upon the tracks and around the loops. Defendant promptly appealed from this order granting the injunction *pendente lite,* and continued to use the property as it had been doing. Plaintiff proceeded in the superior court to cause the mayor of San Francisco and the members of the city's board of public works and the superintendent of the municipal railways of the city to be cited and punished in contempt for violation of the injunction *pendente lite.* The trial court refused to issue the citation in contempt, and this original writ of mandate was sued out to compel the superior court to perform what petitioner conceives to be that court's manifest duty in the premises. It is well settled that in proper cases the superior court should so cite and punish for disobedience to its orders, including injunctions, and it is equally well settled that mandate is the proper remedy where the court refuses to hear and decide such a contempt proceeding. (*Merced Mining Co.* v. *Fremont,* 7 Cal. 130; *In re Wilson,* 75 Cal. 580, [17 Pac. 698]; *Crocker* v. *Conrey,* 140 Cal. 213, [73 Pac. 1006]; *Ex parte Ford,* 160 Cal. 334, [Ann. Cas. 1912D, 1267, 35 L. R. A. (N. S.) 882, 116 Pac. 757].)

The justification of the court's refusal to proceed, it is declared, rests in the fact that the operation of the injunction *pendente lite* was stayed by the appeal taken from it. It is well settled, indeed conceded, that an appeal does not stay the operation of a preventive injunction. Equally well settled is it that an appeal does stay the operation of a mandatory injunction. The argument is that the injunction here under review belongs to the latter class.

Equities are weighed in granting or refusing a temporary injunction, and are to be considered in interpreting it. What are those equities in this case? Fairly to review them the consideration must be divorced from the fact that the defendant is a municipally owned railroad and a popular institution of the city of San Francisco, and the case considered as in every proper judicial aspect it is, simply a controversy between two private street railroad litigants. So considering it, no difficulty will be experienced in determining what are the equities.

Street Railroad A contends that by contract it has agreed to permit Street Railroad B to use a portion of its tracks owned in common, and of its terminal loops owned by it exclusively, for a limited number of cars, and asks to have Street Railroad B restrained from using its property with cars in excess of the contract number. If A is right, then the injury which it is suffering is clear, and lies in the unwarranted invasion and use of its property, in its depreciation by wear, in the illegal congestion and hampering of its own traffic, and in its monetary loss occasioned by its rival carrying passengers who otherwise would patronize A's cars. A temporary injunction is granted. What now are the equities? If the injunction is prohibitive, B is wholly and fully protected, until final determination, by the bond which A is compelled to give. Every dollar of loss which B may sustain will thus be made good. But what is A's position, if this injunction is mandatory? B takes an appeal from the injunction *pendente lite,* and stays its operation without filing any undertaking, and proceeds to make free use of A's property without the slightest security. This continues until judgment on the merits, when the injunction is made permanent. Again B appeals, and again destroys the purpose and effect of the injunction pending appeal, and still continues, without security to A, to injure it financially and deprive it of valuable property rights. And this is precisely the result in this case. Defendant has continued to use the property pending this decision, and while this phase of it has been held here under advisement, the cause has been tried and determined on its merits in the superior court, and plaintiff has been awarded a permanent injunction from which, of course, an appeal will be taken. If this in fact be a mandatory injunction, petitioner will thus be compelled, without hope of recoupment, to bear great financial loss until final determination of the controversy. A consideration of the broad equities thus outlined will not serve to change in the slightest the character of the injunction, but they aid in understanding the true character of the relief awarded, its nature and necessity.

To destroy all of plaintiff's rights pending the final determination of this litigation, or putting it conversely, to give the defendant all that it claims, the justice of which claims is denied by the trial court, we are asked to hold that this is a mandatory injunction. In terms it simply forbids defendant

to use the tracks and loops with an excess number of cars. To the common understanding this would appear to be an order to defendant to stop doing something, not to compel it to do something else, and no more mandatory in character than an order telling a man to desist from throwing his rubbish in his neighbor's vacant lot. But it is said that while merely preventive in terms, it is really mandatory in effect, and compels defendant to surrender real property, or something in the nature of it, an incorporeal hereditament, of which he has possession by the use of the excess cars. Of course no case is cited—none can be cited—which holds that an injunction such as this under review calls for the surrender of the possession of real property. But it is argued that the *principle* of the cases dealing with an actual order to surrender possession of realty is applicable to this case.

Thus a very narrow shoe is elastically stretched to fit the defendant's very large foot. Let us apply, then, the same principle to a parallel case in which a great city is not defendant. A is the owner of land. B is engaged in the trucking business. A for a limited period of time licenses B to use a convenient short-cut across his land as an easement or private right of way with power to confer similar rights upon another. B in turn licenses C (who is in the same business) to use this private right of way to the extent of operating across it ten trucks a day. Soon C is operating fifty trucks. B protests. C is obdurate. B seeks to enjoin C from driving more than ten trucks a day over this right of way. It is a gross interference with B's business. The court finds. B's contention well founded and C to be acting without right, and forbids C from employing more than ten trucks. What is the difference between the two cases? Nothing in principle, nothing in fact, saving that in the actual case here presented a large municipality is the party defendant. And what would have been the answer, in the supposititious case, had C appealed and contended that the appeal stayed the operation of the injunction because it was mandatory? Unhesitatingly C would have been told that every separate act of his in causing one of his excess trucks to be driven over B's right of way was a trespass subjecting him to an action at law, that it is one of the peculiar provinces of equity to restrain and forbid by injunction precisely such repeated acts of trespass where the loss sustained is difficult of admeasurement, and where the legal redress in-

volving a multiplicity of suits is wholly inadequate; that an
injunction restraining trespass is not mandatory, it is strictly
prohibitory within the exact language of section 3368 of the
Civil Code, which defines preventive relief as being given "by
prohibiting a party from doing that which ought not to be
done." And equally is it within the explicit definition of an
injunction found in section 525 of the Code of Civil Procedure,
where it is defined as "a writ or order requiring a person to
refrain from a particular act." In Georgia (*Florida Yellow
Pine Co.* v. *Flint River Naval Stores Co.,* 140 Ga. 321, [78 S. E.
900], where mandatory injunctions may not be granted at all,
this precise question arose in an injunction granted to restrain
continuing trespasses upon plaintiff's land, and the contention
was made that the restraining injunction was mandatory in
character. The contention was disposed of by the supreme
court of Georgia, in the following language: "The court re-
strained the defendants from going upon the land, and from
cupping, boxing and working the timber. Inasmuch as the
defendants were already upon the land, engaged in cutting,
boxing and working the timber, it is contended that the in-
junction was mandatory in character. We do not think so.
The scope of the court's order was, not to require the defend-
ants to do a particular act, but to refrain from cutting and
boxing the timber." In *Longwood Valley R. R. Co.* v. *Baker*,
27 N. J. Eq. 166, defendants by a dam had caused the im-
pounded water of a mill pond to rise above a certain height.
The injunction restrained defendants from maintaining the
water above a specified height. It was contended that as the
dam was already built this was mandatory in that it compelled
defendants to lower the height of their dam or to construct a
spillway. The court answered: "The objection cannot be
sustained. The injunction is against causing the water to rise
any higher than it was accustomed to rise on the day desig-
nated. The injury was a continuing injury from day to day.
The mill owners were not required to reduce their dam, but to
refrain from raising the water beyond a certain height." In
*Moore* v. *Clear Lake Water Works,* 68 Cal. 146, [8 Pac. 816],
complaint was made of a continuous wrongful diversion of
water against plaintiff's rights and an injunction was sought.
It was granted. This court was not embarrassed over the
question of its being a mandatory injunction. It was tacitly
conceded to be a prohibitive injunction. Says this court:

"Here the plaintiff complains of a continuous wrongful act and consequent infringement of his rights, and therefore prays for an injunction to stay such continuous injury, and it is only in a court of equity and by means of an injunction that an adequate remedy can be had." To the same purport is *Conkling* v. *Pacific Improvement Co.,* 87 Cal. 296, [25 Pac. 399]. Here in effect it was asserted that the injunction was mandatory, in that, at the time of the commencement of the action, "the diversion by the six-inch pipe was complete, and for that reason injunction could not properly issue." Says this court: "But conceding that the six-inch pipe had been put in and the diversion of the water had taken place at the time that the amended complaint was filed, and conceding that the diversion had actually taken place, the act of carrying the water away from its natural channel, if wrongful, was a continuous act, against which an injunction might issue. The continued diversion of the water was the material thing to be enjoined, and not the putting in of the pipe."

Returning to the argument of the city, it is this: That the right to use the rails of the United Railroads is an incorporeal hereditament, an interest in real property which can be enjoyed only by use, and the possession of which can be manifested only by running the cars over the tracks from time to time; that as the city had been thus for several months operating its excess cars over these tracks, under claim of right, and had not been, at any time, actually prevented by the United Railroads from so doing, the city was in legal possession of the interest claimed and, consequently, the injunction, though prohibitory in form, requiring it merely to cease operating such cars, is, in effect, an order directing the city to relinquish its possession of the incorporeal hereditament and, therefore, mandatory in character.

If this argument were valid, it would put an end to the universally established doctrine that equity enjoins by preventive injunction the commission of repeated trespasses affecting realty where legal redress would require a multiplicity of actions or where the wrongful use, if permitted to continue, would eventually ripen into a right by prescription. The application for an injunction would be met by the statement that the defendant had been in actual use of the right claimed, that this was equivalent to legal possession thereof, and that injunction will not lie to oust one who is in peaceable possession,

since there is an adequate remedy at law by an action to recover possession. That such doctrine cannot be maintained is apparent. The answer is that the repeated entries without right upon the land of another is not possession thereof. It is nothing more nor less than a series of continuing trespasses, each a wrongful act, and no one nor all of those acts become rightful until by the lapse of time necessary to establish title by prescription the trespasser has become the legal owner of the right to use the way. (*Chattanooga Terminal R. Co.* v. *Felton*, 69 Fed. 273, 277; *Coatsworth* v. *Lehigh Valley Ry. Co.*, 156 N. Y. 451, 454, [51 N. E. 301]; *Hooper* v. *Dora Coal Mining Co.*, 95 Ala. 235, [10 South. 652]; *Lake Shore etc. Ry. Co.* v. *Felton*, 103 Fed. 227, [43 C. C. A. 189].)

There is no magic in the phrase ''maintaining the *status quo*'' which transforms an injunction essentially prohibitive into an injunction essentially mandatory. The phrase is commonly employed in discussing mandatory injunctions compelling the surrender of possession of realty by the actual peaceable occupant at the time the injunction has been secured. Indeed, the phrase has been defined to mean ''the last actual peaceable, uncontested status which preceded the pending controversy.'' There was no such uncontested possession here. It is undisputed that petitioner protested before beginning its action, protested vigorously against the misuse of its property, and only brought its action when its protests were disregarded. It is not easy to perceive what more the plaintiff should have done in the assertion and maintenance of its rights. Nor, upon the other hand, can it be perceived how the conduct of the city officials conferred upon the city any new rights. When in New York the creation of a new right was asserted, upon a similar state of facts, the supreme court of that state found no difficulty in declaring: ''But this failure and acquiescence amounted to simply a license for the time being, and was not sufficient to create any permanent and irrevocable right.'' (*Chapman* v. *Syracuse Rapid-Transit Ry. Co.*, 25 Misc. Rep. 626, [56 N. Y. Supp. 250].)

Sufficient has been said, we think, to show that when the character of an injunction is subjected to review before a higher tribunal, that tribunal, in the exercise of its equitable jurisdiction, seeks first to determine the nature and adequacy of the relief granted. It will not condemn an injunction even if it be mandatory in character, for injunctions of this character,

when they afford the only adequate means of relief to a petitioner, are steadily growing in favor. (1 Joyce, Injunctions, sec. 101; 1 Beach, Injunctions, sec. 101.) So, too, the court will not destroy the relief granted by any excessive astuteness in selecting some minor mandatory feature of the injunction and holding that that should control the consideration of the nature of the relief awarded. What essentially are the features of this injunction? The defendant is not compelled to surrender any possession. It retains its possession. But it is forbidden from making what the court has determined to be an illegal and improper use of that possession.

There are but few jurisdictions where appeals, even when appeals are permitted, are allowed to operate to stay the effect even of a mandatory injunction. In this state such an appeal does so operate. But in other states, where a similar rule prevails, the courts have been swift in holding that the character of a prohibitive injunction was not transformed and made mandatory because it incidentally involved the doing of an affirmative act. A man has unlawfully diverted the water of a stream above his neighbor's land. The neighbor seeks to enjoin this diversion and the court grants the prohibitive injunction restraining him from further diverting the water. But he has already diverted it, and to comply with this injunction requires him either to shut down his headgate or fill in the diverting ditch. Here is compulsion upon him to do an affirmative act. Yet the supreme court of Georgia, like this court, found no difficulty in declaring that this incidental fact did not change the character of the injunction. (*Goodrich* v. *Georgia R. & Banking Co.,* 115 Ga. 340, [41 S. E. 659].) In Georgia, as has been said, the granting of a mandatory injunction is absolutely prohibited. In *Merchants' & Miners' Transp. Co.* v. *Granger, etc.,* 132 Ga. 167, [63 S. E. 700], the injunction restrained the defendant "from refusing to receive and carry the lumber of the plaintiff in the order in which it is duly tendered for shipment." It was contended that this was not a preventive injunction, but was strictly mandatory in character, since its effect was to compel the defendants to do the affirmative act of taking and receiving and shipping the lumber. The supreme court of Georgia declared: "While under the code an injunction will not issue to compel a person to perform an act, yet the court may grant an order, the essential feature of which is to restrain, although in yielding

obedience to the restraint the defendant may incidentally be compelled to perform some act." The same principle is announced in *Falcon* v. *Boyer,* 157 Iowa, 745, [142 N. W. 427], in the following language: "While an injunction is issued primarily to restrain and not to compel an act, defendant may be required to do some affirmative act necessary to effectuate the principal purpose of the order." In *Fairfield Floral Co.* v. *Bradbury,* 87 Fed. 415, the postmaster had changed the usual course of business of his office. An injunction was sought to prevent the continuance of such interruption. It was argued that the injunction would be mandatory because it would compel the postmaster to do things other than those he was performing. The circuit court disposed of the contention in the single sentence: "If incidentally this would compel the postmaster to perform some minor things which in the ordinary course of business he would perform, this would not render it a mandatory injunction."

And we may properly conclude this discussion by a quotation from one of our own early cases (*Merced Mining Co.* v. *Fremont,* 7 Cal. 130) : "But when a party is restrained by injunction, he is not injured in contemplation of law, as he is already secured by the undertaking. If, on the contrary, an appeal, with an undertaking of three hundred dollars, would have the effect of staying the injunction itself, then the plaintiff would have no remedy, and the writ be idle. It would entirely destroy the usefulness of this writ. A stay of proceedings, from its nature, only operates upon orders or judgments commanding some act to be done, and does not reach a case of injunction."

Sufficient we think has been said to show what other courts have declared to be the true principle governing the construction of injunctions. In this state the same principle was at a very early date pointed out, as appears from the quotation in *Merced Mining Co.* v. *Fremont,* 7 Cal. 130.

It thus conclusively appears that in its essence this injunction is prohibitive and restrains continuous acts of trespass upon plaintiff's property. *Clute* v. *Superior Court,* 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362], (relied on by respondent), was the case of a defendant, manager of the plaintiff hotel corporation, who was in managerial control of plaintiff's hotel and of its servants and employees. He was holding possession under claim of contract right. He disputed the

right and power of the plaintiff to represent the corporation or to oust him from his position. The injunction in terms restrained him "from interfering with or directing or attempting to direct or control the employees of said corporation." The conclusion which this court reached was so plain and impregnable that there was no dissent from it, and that conclusion was that the defendant by this injunction was, in effect, ordered to surrender possession and management of the hotel property to plaintiff. It was a most manifest case of a mandatory injunction couched in prohibitive terms. To find in this case authority for holding the injunction in the present case to be mandatory passes comprehension. If this be a mandatory injunction, then must every injunction restraining waste and trespass be equally mandatory.

As little pertinency is there in the argument that after the issuance of the injunction the defendant continued in the enjoyment of its alleged rights. It continued this enjoyment only by the open defiance on the part of the mayor and other municipal officers to which we have adverted, and a complete answer to this is found in the language of the court of appeals of New York, in *Sixth Avenue R. Co.* v. *Gilbert El. R. Co.,* 71 N. Y. 430: "It would seem to be preposterous that a party could be deprived of the whole fruit of the judgment by the lawless act of the defeated party pending an appeal, without remedy; that he must stand by and without possibility of redress, see the subject matter of the litigation destroyed, so that if he succeeds in affirming the judgment it will be a barren victory."

Let mandate issue as prayed for.

Shaw, J., Melvin, J., and Lorigan, J., concurred.

SLOSS, J., Concurring.—I concur in the judgment. While the question is not to my mind free from doubt, I have come to the conclusion that the injunction should be viewed as prohibitive rather than mandatory.

The solution of the problem is not greatly aided by an examination of the authorities cited on either side, for in none of them was there presented a set of facts at all like those before us here. A mandatory injunction is one which commands affirmative action by the defendant. The character of the order as mandatory or prohibitive is not determined by

the form of words in which it is cast.    Affirmative action may be required by phrases which on their face purport to prohibit. An injunction which restrains directors of a corporation from refusing to recognize the plaintiff as one of their number is mandatory because in effect it compels them to recognize him. (*Foster* v. *Superior Court,* 115 Cal. 279, 284, [47 Pac. 58].) An injunction which prohibits a defendant in possession of tangible real or personal property from interfering with the plaintiff's taking of possession is mandatory because it compels the defendant to turn over his possession to the plaintiff. (*Clute* v. *Superior Court,* 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362].)    The Clute case is the one upon which the respondents place their main reliance, but I do not think the doctrine of that decision can be extended to fit the requirements of the present situation.    Here the defendant is not required to transfer the possession of tangible real or personal property.    The defendant was claiming the right to run its cars over certain tracks.    This right was disputed and its exercise enjoined.    If we take words in their ordinary meaning, it is difficult to see that any affirmative action is required by an order which merely prohibits a defendant from operating cars over a certain route.    The fact that the defendant had for some time been enjoying its asserted right to so run cars does not change the character of the order.    If this were not so, almost any injunction against the doing of repeated acts would be mandatory if the performance of the acts had begun and been carried on for any considerable time prior to the application for the injunction.    For example, an injunction against the continued operation of a cement plant to the injury of plaintiff's adjacent orange grove (*Hulbert* v. *California Portland Cement Co.,* 161 Cal. 239, [38 L. R. A. (N. S.) 436, 118 Pac. 928]), or against the operation of a ferry claimed to have been conducted in infringement of the plaintiff's franchise rights (*Vallejo Ferry Co.* v. *Solano Aquatic Club,* 165 Cal. 255, [Ann. Cas. 1914C, 1197, 131 Pac. 864]), or one restraining a smelting company from permitting fumes from its works to blow over and upon neighboring lands (*People* v. *Selby Smelting & L. Co.,* 163 Cal. 84, [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135]), could be regarded as mandatory.    But although in each of the cases just referred to the plaintiff's right to an injunction was bitterly contested, it does not appear to have occurred to the learned counsel representing the

various defendants that the injunctions were mandatory and that their effect could, for this reason, be stayed pending appeal.

I agree, therefore, that this injunction does not command affirmative action, but prohibits the repetition of acts found by the court to be unlawful. It is not made mandatory by the fact that the commission of such acts had gone on for some time before the commencement of the action.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment and in the opinion of Mr. Justice Sloss. While at first inclined to the view that the facts of this case made applicable the doctrine of the decision in *Clute* v. *Superior Court,* 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362], consideration of the question in the light of the foregoing opinions has satisfied me that the cases are not analogous in principle. It is only upon the theory that the injunction here involved requires something in the nature of a surrender of real or personal property that such cases as the Clute case can be held to apply. The argument of respondents, of course, is that such is the situation here, and the facts shown by the record are such as to give some degree of plausibility to the argument made. But I have finally concluded that the argument is not well based. So far as "possession" within the meaning of the rule may be said to substantially exist as to the municipality, it is not at all affected by the injunction, and the municipality is not required by its terms to abandon or yield *possession* of anything. The "possession" of the municipality continues unimpaired. The question presented by the proceeding is simply one of the extent of the *use* the municipality may make of the property, part of which it owns and possesses in common with petitioner, and part of which is owned exclusively by petitioners. Admittedly this is a matter regulated entirely by a contract between the parties, and it is claimed by petitioner and adjudicated for the purposes of the injunction *pendente lite* that the municipality is violating the terms of the contract by operating cars over the railway tracks that it has no right to so operate in view of the contract. The injunction substantially forbids a use found by the court to be unwarranted in view of the contract, and, of course, forbids this on the theory that the unwarranted use complained of, and found to

exist, the operation over the railway of cars that the contract gives it no right to operate thereon, is simply a trespass.

LAWLOR, J., Dissenting.—I dissent. Upon the record before us, it seems to me that there can be no question but that the injunction changes the status of the city and county of San Francisco in relation to its claim of right to operate the "C" and "D" cars over the outer tracks on Market Street and the loop on the Embarcadero—a right which had been peacefully enjoyed with the apparent acquiescence of petitioner for some months prior to the commencement of the action.    To disturb such a status involves the exercise of mandatory authority.    And "it is thoroughly settled that, while an injunction which merely has the effect of preserving the subject of the litigation *in statu quo* is not suspended by an appeal (*Merced Min. Co.* v. *Fremont,* 7 Cal. 130; *Heinlen* v. *Cross,* 63 Cal. 44; *Swift* v. *Shepard,* 64 Cal. 423, [1 Pac. 493]; *Dewey* v. *Superior Court,* 81 Cal. 64, [22 Pac. 333]; *Rogers* v. *Superior Court,* 126 Cal. 183, [58 Pac. 452]); a mandatory injunction, i. e., one which compels affirmative action by the defendant, cannot be enforced pending a duly perfected appeal.    (*Foster* v. *Superior Court,* 115 Cal. 279, [47 Pac. 58]; *Mark* v. *Superior Court,* 129 Cal. 1, [61 Pac. 436]; *Schwarz* v. *Superior Court,* 111 Cal. 106, [43 Pac. 580]; *Stewart* v. *Superior Court,* 100 Cal. 543, [35 Pac. 156, 563].) If an injunction, though couched in terms of prohibition, is mandatory in effect, a proceeding by the court issuing it to punish a violation as a contempt is in the nature of process for the enforcement of the affirmative feature of the writ. . . . If the injunction compels him affirmatively to surrender a position which he holds, and which, upon the facts alleged by him, he is entitled to hold, it is mandatory." (*Clute* v. *Superior Court,* 155 Cal. 15, [132 Am. St. Rep. 54, 99 Pac. 362].    See, also, *Hagen* v. *Beth,* 118 Cal. 330, [50 Pac. 425].)

As to the "C" and "D" cars, it was sought to compel the said city and county to abandon the use and occupation of the tracks which would have had the result of placing the petitioner in the precise position it seeks through a permanent injunction.

On the score of the equities involved, it is to be kept in mind that if the legal effect of the injunction was to make it prohibitory, its enforcement would have worked a serious in-

jury not alone to the said city and county, but to the public at large, by reason of the interference with the expeditious transportation of passengers to and from the Panama-Pacific International Exposition, to which service these cars were particularly dedicated. And as the proceeding may involve the liberty of the persons sought thereby to be brought before the superior court, any doubt touching the question of the character of the injunction should be resolved against the petition.