# IN THE SUPREME COURT OF CALIFORNIA

MICHAEL GOMEZ DALY et al.,
Plaintiffs and Respondents,

v.

SAN BERNARDINO COUNTY BOARD OF
SUPERVISORS et al.,
Defendants and Appellants;
DAWN ROWE,
Real Party in Interest and Appellant.

S260209

Fourth Appellate District, Division Two
E073730

San Bernardino County Superior Court
CIVDS1833846

August 9, 2021

Justice Kruger authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Corrigan, Liu,
Cuéllar, Groban, and Jenkins concurred.

DALY v. SAN BERNARDINO COUNTY BOARD OF
SUPERVISORS

S260209


Opinion of the Court by Kruger, J.


To prevent injuries "from the premature enforcement of a determination which may later be found to have been wrong," the law has developed a set of rules and procedures for staying enforcement of certain court orders while they are reviewed on appeal. (*Scripps-Howard Radio v. Comm'n* (1942) 316 U.S. 4, 9.) In California, a long-established set of rules governs stays of injunctive orders — that is, orders to do something or to refrain from doing something. What rule applies depends on which kind of order it is. An injunction that requires no action and merely preserves the status quo (a so-called prohibitory injunction) ordinarily takes effect immediately, while an injunction requiring the defendant to take affirmative action (a so-called mandatory injunction) is automatically stayed during the pendency of the appeal.

In this case we consider how these rules apply to an order requiring a local legislative body, the San Bernardino County Board of Supervisors, to remove and replace one of its members. The order was based on a ruling that the board had violated statutory open-meeting requirements in making an appointment to a vacant board seat; as a remedy, the superior court required the board to rescind the appointment and to seat a replacement board member to be named by the Governor, according to the terms of the county charter. The board filed a petition for a writ of supersedeas to stay the effect of the

1

superior court's order, which the Court of Appeal denied. We now reverse. The superior court's order to remove and replace the board member was a mandatory injunction — a command that the board take affirmative action to remedy the violation found by the trial court. As such, under long-established precedent, the order should be stayed until the appellate court has determined whether the trial court was correct.

## I.

The San Bernardino County Board of Supervisors consists of five members elected from districts within the county. The county charter provides that within 30 days of a vacancy on the board, the remaining members of the board are to appoint a replacement by majority vote. If the board does not fill the vacancy within 30 days, the appointment is to be made by the Governor. (San Bernardino County Charter, art. 1, §§ 1, 7, as amended through Nov. 6, 2012.)

The supervisorial seat for San Bernardino County's Third District became vacant on December 3, 2018, when the incumbent left to join the California Assembly. The board's remaining supervisors began the process of appointing a replacement. The board received 48 applications from candidates meeting the eligibility requirements. Rather than interviewing all 48 applicants, the supervisors instead decided they each would submit nominees to the board's clerk by e-mail; only those candidates who had received at least two nominations would be interviewed. Through this e-mail nomination process, the board selected 13 candidates to be interviewed at a public meeting. At that meeting, the board then winnowed the field to five finalists, including real party in interest Dawn Rowe. The finalists were to be interviewed again at a special meeting on

December 13, at which time the board expected to make the appointment.

Before that special meeting took place, the board received a letter from a resident who claimed the e-mail nomination process had violated the Ralph M. Brown Act (Brown Act), Government Code section 54950 et seq., which generally requires local legislative bodies to hold open meetings. The board then deferred further action on the appointment to its regular meeting set for December 18, 2018. Before the December 18 meeting, plaintiff Michael Gomez Daly sent the board a letter on behalf of the civic organization he directed, plaintiff Inland Empire United, also asserting that the board's nomination process had violated Brown Act provisions against "seriatim" meetings (that is, a series of closed communications or deliberations between members that collectively add up to the work of a legislative quorum) and secret ballots. Daly demanded the board adopt a new selection process in which all qualified applicants would have the opportunity for an interview.

At the December 18 meeting, the board took action in response to the claims that the e-mail nomination process violated the Brown Act. It voted to rescind its prior actions in the selection of a new Third District supervisor, including the creation of the list of 13 nominees to be interviewed, and to adopt a new process under which each supervisor would publicly submit up to three names and the board would publicly interview each candidate who received at least one vote. Using that process, the board, at the same meeting, selected six candidates to be interviewed, including Rowe. After the interviews, the board selected Rowe, who was then sworn in.

Plaintiffs Daly and Inland Empire United promptly filed a petition for a writ of mandate, naming as respondents the board and the four members who had participated in Rowe's appointment (collectively, the Board), with Rowe as the real party in interest. Plaintiffs sought a judicial determination that the initial nomination process violated two provisions of the Brown Act: Government Code section 54952.2, subdivision (b)(1), barring the use of seriatim communications in lieu of a meeting, and Government Code section 54953, subdivisions (a) and (c), requiring local legislative bodies to meet and vote openly. They also sought a determination that the violations had not been cured or corrected by the Board's actions at the meeting on December 18, 2018, and that Rowe's appointment was therefore "null and void under [Government Code] section 54960.1." As a remedy, they asked the superior court for an order requiring the Board to rescind the appointment and for a declaration that, no lawful and timely appointment having been made by the Board, the appointment of the Third District supervisor "shall be made by the Governor."

The superior court granted the mandate petition. In its statement of decision, the court concluded the Board's initial e-mail nomination process violated the Brown Act's "prohibition against seriatim meetings and secret ballots." The court further found the Board's attempted corrective actions at the December 18 meeting were "pro forma at best and did not constitute a cure."[1] The superior court accordingly determined Rowe's appointment was null and void under Government Code section

---

[1] The merits of the superior court's decision on these points is not before us, and we express no opinion regarding them.

54960.1 and had to be rescinded, with a new appointment to be made by the Governor.[2]

In its subsequent judgment issuing a peremptory writ of mandate, the trial court ordered the Board to: "1. Rescind the appointment of Rowe as Third District Supervisor; [¶] 2. Refrain from allowing Rowe to participate as Third District Supervisor in any Board meetings or actions; [¶] 3. Refrain from registering or otherwise giving effect to any further votes cast by Rowe; [¶] 4. Refrain from making any appointment to the position of Third District Supervisor of the San Bernardino Board of Supervisors; and [¶] 5. Immediately seat any person duly appointed to the position of Third District Supervisor by the Governor."

The Board and Rowe appealed. After obtaining a temporary stay of the judgment from the superior court, the Board and Rowe petitioned the Court of Appeal for a writ of supersedeas and requested an immediate stay. The Court of Appeal issued a temporary stay pending briefing on the supersedeas petition, but then denied the stay for the pendency of the appeal. The Court of Appeal opined that the trial court's order was not automatically stayed as a mandatory injunction because "upon a finding that [the Board's] appointment of real

---

[2] Government Code section 54960.1, subdivision (a), provides: "The district attorney or any interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5 is null and void under this section. Nothing in this chapter shall be construed to prevent a legislative body from curing or correcting an action challenged pursuant to this section."

party Dawn Rowe was null and void as arising out of a violation of the Brown Act [citation], the seemingly mandatory acts required in the superior court's injunction and writ of mandate are merely incidental to that finding and the injunction and writ of mandate are prohibitory in nature. [Citation.] The same finding of a null and void appointment means there was no change in status quo by the superior court's order." The court also denied a discretionary writ of supersedeas, reasoning that the Board and Rowe had neither shown they would be irreparably injured by the injunction nor "facially demonstrated the merits of the issues they present."

The Board and Rowe filed a joint petition for review asking whether the superior court's order should have been automatically stayed as a mandatory injunction. We granted the petition for review and stayed the judgment and further proceedings below pending our further order. We also asked the parties to brief an additional question bearing on the Board's entitlement to a discretionary writ of supersedeas (Code Civ. Proc., § 923); specifically, we asked whether plaintiffs had properly brought this action as a petition for writ of mandate under the Brown Act's remedial provision (Gov. Code, § 54960.1, subd. (a)) or whether plaintiffs were instead limited to challenging the Board's appointment by means of an action in the nature of quo warranto under Code of Civil Procedure section 803. We now conclude the order here should have been automatically stayed as a mandatory injunction; we accordingly do not address whether a discretionary writ of supersedeas should have issued based on the likelihood of the Board's success on the merits of the quo warranto exclusivity issue.

## II.

## A.

The rules governing stays pending appeal are found in Code of Civil Procedure part 2, title 13, chapter 2. The relevant statutes codify the common law rule under which an appeal ordinarily operates to stay proceedings to execute the trial court's judgment. (See, e.g., *Hovey v. McDonald* (1883) 109 U.S. 150, 157, 160–161.) The codification of this default rule dates to our earliest civil procedure statute, the 1851 Practice Act. The act required undertakings, receiverships, or deposits to stay money judgments for orders involving personal or real property or execution of instruments. (Stats. 1851, ch. 5., §§ 349–352, pp. 106–107.) The act went on to provide that in other cases (and except for orders directing the sale of perishable property), "the perfecting of an appeal, by giving the undertaking . . . , shall stay proceedings in the Court below upon the judgment or order appealed from . . . ." (*Id.*, § 356, p. 108.)

Today, Code of Civil Procedure section 916 continues to make stay pending appeal the default, subject to various exceptions that are irrelevant here: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any

other matter embraced in the action and not affected by the judgment or order."  (Code Civ. Proc., § 916, subd. (a).)[3]

Where the statutory conditions have been met and a stay on appeal is prescribed, the courts lack discretion to deny it except as other statutes may authorize — for instance, a trial or appellate court on appeal from a writ of mandate may direct the judgment not be stayed "if it is satisfied upon the showing made by the petitioner that he will suffer irreparable damage in his business or profession if the execution is stayed."  (Code Civ. Proc., § 1110b.)

Even when the statutes do not call for an automatic stay on appeal, the trial and appellate courts both have the power to issue discretionary stays.  (Code Civ. Proc., §§ 918, 923.)  A discretionary writ of supersedeas is appropriate where "difficult questions of law are involved and the fruits of a reversal would be irrevocably lost unless the status quo is maintained."  (*People ex rel. S. F. Bay etc. Com.  v. Town of Emeryville* (1968) 69 Cal.2d 533, 537; see *Deepwell Homeowners' Protective Assn. v. City*

---

[3]      The exceptions described in the first clause cross-reference provisions setting out the scope and manner of stays for certain types of judgments and orders.  Code of Civil Procedure section 116.810 relates to small claims court judgments and orders, while Code of Civil Procedure sections 917.1 to 917.9 address various judgments and orders rendered in the superior courts.  Section 917.1, for example, requires the appellant to deposit a monetary undertaking for a money judgment to be stayed on appeal.  Code of Civil Procedure sections 917.2, 917.3 and 917.4 specify the types of undertakings and deposits required to stay judgments and orders directing delivery or sale of personal property, execution of an instrument and delivery or sale of realty, respectively.

*Council* (1965) 239 Cal.App.2d 63, 66 [supersedeas appropriate where the appellant has shown sufficient merit in the appeal and a stay is necessary " 'to preserve to an appellant the fruits of a meritorious appeal' "].)

No statute in chapter 2 of the Code of Civil Procedure part 2, title 13, specifically addresses the stay of injunctive orders, as distinct from other kinds of judgments.[4]  From the start, however, courts have understood the default statutory rule governing stays pending appeal to apply to some injunctive orders but not others, embracing a common law distinction between prohibitory, or preventive, injunctions and those mandating performance of an affirmative act.  (See generally 2 High, A Treatise on the Law of Injunctions (4th ed. 1905) Appeals, § 1698a, pp. 1647–1648 [describing common law rule]; *A.R. Barnes & Co. v. Chicago Typographical Union No. 16* (1908) 232 Ill. 402, 405–409 [83 N.E. 932, 933–935] [same]; *Sixth Ave. R.R. Co. in City of N.Y. v. Gilbert El. R.R. Co.* (1877) 71 N.Y. 430, 432–434 [no stay of prohibitory injunction].)

In *Merced Mining Co. v. Fremont* (1857) 7 Cal. 130 (*Merced Mining*), for instance, this court acknowledged that the language of the 1851 Practice Act's section 356 prescribing automatic stay pending appeal was facially broad enough to include "the appeal from an order granting an injunction."  But

---

[4]    Certain provisions do prescribe special rules for specific types of injunctions, none of which are at issue here. (See, e.g., Code of Civil Procedure sections 917.15 [no default automatic stay for order remedying or preventing release of hazardous substances], 917.8, subdivision (c) [same for order barring use of building or place declared a nuisance], 917.9, subdivision (a)(2) [undertaking may be demanded where order requires appellant "to perform an act for respondent's benefit"].)

this court concluded that the language was best understood in context to reach orders requiring the defendant "to do some *affirmative* act, not to refrain from doing a thing." (*Merced Mining*, at p. 132.) We explained that an affirmative act, "if completed, would change the condition of the parties, and render a reversal . . . partially ineffectual." (*Ibid*.) By contrast, when an order instead merely restrains the defendant, an automatic stay on appeal does not serve the same purpose; the defendant "is not injured in contemplation of law" when the defendant is required to abide by the restraint pending appeal. (*Ibid*.) We thus described the governing rule as follows: "A stay of proceedings, from its nature, only operates upon orders or judgments commanding some act to be done, and does not reach a case of injunction." (*Ibid*.)[5]

We reiterated the same rule some decades later, following the adoption of the Code of Civil Procedure. (*Dewey v. Superior Court* (1889) 81 Cal. 64.) We explained: "An appeal perfected as this was, under section 949 of the Code of Civil Procedure, stayed all proceedings upon every part of that judgment 'commanding some act to be done.' (*Merced Mining*[, *supra*], 7 Cal. 130; *Bliss v. Superior Court* [(1881)] 62 Cal. [543,] 544.) A prohibitory injunction remains in full force pending such an appeal, and the court below may enforce obedience thereto; but

---

[5] The *Merced Mining* court here used "injunction" in the limited sense of an ordered restraint. That definition is still extant in the statutes. (See Code Civ. Proc., § 525 ["An injunction is a writ or order requiring a person to refrain from a particular act."].) But in broader legal usage, an injunction is a court order *either* "commanding *or* preventing an action." (Black's Law Dict. (11th ed. 2019) p. 937, italics added.) This opinion uses the term in the broader, more familiar sense.

a mandatory injunction is stayed by the operation of such appeal, the object of the rule in both cases being to preserve the *status quo*." (*Dewey*, at p. 68.)[6]

As *Dewey* told the story, the core rationale underlying the mandatory-prohibitory distinction was based on an abiding concern with preserving the status quo pending appeal. The idea was that a prohibitory injunction is exempt from stay because such an injunction, by its nature, operates to preserve the status quo; by definition such an injunction prevents the defendant from taking actions that would alter the parties' respective provisions. To stay enforcement of such an order pending appeal would not preserve the status quo but instead invite its destruction; a stay would leave the parties free to alter conditions during the appeal, with sometimes irreversible consequences. As we put it in *Heinlen v. Cross* (1883) 63 Cal. 44, if our law had no exception for purely preventive injunctions, the appealing party could renew or continue any destructive conduct during the period of appeal, even if that would cause irreparable damage, while the victorious party below " 'must stand by, and without possibility of redress, see the subject-matter of the litigation destroyed, so that if he succeeds in affirming the judgment it will be a barren victory.' " (*Id.* at p. 46, quoting *Sixth Ave. R.R. Co. in City of N.Y. v. Gilbert El. R.R. Co.*, *supra*, 71 N.Y. at p. 433; see *Heinlen*, at p. 46 [" 'If the respondent here is right in its contention, pending an appeal

---

[6] Former section 949 of the Code of Civil Procedure, a predecessor to section 916, contained terms similar to those in section 356 of the 1851 Practice Act. (See *Foster v. Superior Court* (1896) 115 Cal. 279, 282.)

from a judgment staying waste, which if committed will destroy the freehold, the appellant in simply staying the plaintiff's proceedings on the judgment may with impunity do the very act forbidden and destroy the freehold.' "].)

Not so with the injunction that mandates the performance of an affirmative act — the so-called mandatory injunction. Such an injunction, by definition, commands some change in the parties' positions. The cases hold that before such orders are executed and the defendant must detrimentally alter its position, the defendant is entitled to know whether the order is correct. (See, e.g., *Kettenhofen v. Superior Court* (1961) 55 Cal.2d 189, 191; *Byington v. Superior Court* (1939) 14 Cal.2d 68, 70; *United Railroads v. Superior Court* (1916) 172 Cal. 80, 82; *Clute v. Superior Court* (1908) 155 Cal. 15, 18; *URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 884; *Paramount Pictures Corp. v. Davis* (1964) 228 Cal.App.2d 827, 835.)

Like many distinctions in the law, the distinction between a mandatory and a prohibitory injunction sometimes proves easier to state than to apply. (*URS Corp. v. Atkinson/Walsh Joint Venture*, *supra*, 15 Cal.App.5th at p. 884, citing *Kettenhofen v. Superior Court*, *supra*, 55 Cal.2d at p. 191; see pt. III., *post*.) But the law contains certain benchmarks that help guide the inquiry. Perhaps the prototypical mandatory injunction is an order requiring the defendant to remove an improvement it has made to challenged property. For example, "in an action to establish an easement, a preliminary injunction ordering a party to remove an existing fence that blocks the easement is a mandatory injunction," while "restraining the party from parking or storing vehicles along the easement is a prohibitory injunction." (*URS Corp.*, at p. 884, citing

*Kettenhofen,* at pp. 190–191.) But mandatory injunctions in property disputes are not limited to tear-down orders. For instance, in *Byington v. Superior Court*, *supra*, 14 Cal.2d 68, we held that an order limiting San Francisco's storage of Tuolumne River water in Hetch Hetchy Reservoir to the amount of the city's prescriptive right was mandatory rather than prohibitory. We explained how the limitation altered the parties' relative positions: "Throughout the trial of the main action, and up to the present moment, the city has contended that in addition to the prescriptive right recognized in and awarded to it under the decree of the respondent court, it was the owner and possessor of certain appropriative rights in and to the waters of the Tuolumne River." (*Id.* at p. 72.) Insofar as the order required San Francisco to surrender its appropriative rights, the order was mandatory and automatically stayed on appeal. (*Ibid.*)

A substantial body of case law addresses the mandatory-prohibitory distinction in the context of disputes concerning employment, board membership, and the like. The cases have characterized orders requiring officers to surrender their positions as mandatory as well. For example, in *Foster v. Superior Court*, *supra*, 115 Cal. 279 (*Foster*), we held an order that a particular candidate be recognized as a member of a railway company board in place of another competitor who had already been seated was mandatory in that its enforcement "would change the relative positions of the parties from those existing at the time the decree was entered, and might render a reversal of the judgment entirely ineffectual." (*Id.* at p. 284.)

We expanded on this analysis in *Clute v. Superior Court*, *supra*, 155 Cal. 15 (*Clute*), which involved an injunction against a hotel corporation treasurer and manager who had been removed by the board of directors but who refused to vacate the

position, claiming the removal was invalid. On its face the injunction merely restrained the officer from attempting to direct or control the hotel's employees. We concluded that the injunction was nonetheless mandatory in substance, and therefore automatically stayed on appeal, because it required the defendant to undertake the affirmative act of transferring management of the hotel. We wrote: "If Clute was in the actual possession of the hotel and the personal property in it, an order punishing him for preventing another person from entering and taking charge of the books, keys, and other property could have no other purpose or effect than to compel him to turn over his possession to such other, or at least to surrender his theretofore exclusive possession." (*Id.* at p. 19.) And "[i]f the injunction compels him affirmatively to surrender a position which he holds, and which, upon the facts alleged by him, he is entitled to hold, it is mandatory." (*Id.* at p. 20.) In making this determination, we explained that the relevant comparison is "[t]he *status* of the parties, at the time the injunction was issued"; we observed that an order for Clute to turn over control to other claimants "would certainly, if executed, operate to change that *status*." (*Id.* at pp. 19–20.)

In *Feinberg v. One Doe Co.* (1939) 14 Cal.2d 24, where a clothing manufacturer had been ordered to discontinue employment of an individual who had been expelled from the labor union representing the company's employees, we explained that although the injunction was purportedly prohibitive in form, it was mandatory in substance: "It is an order compelling affirmative action on the part of the defendants. Inasmuch as Amelia Greenwood at the time of the issuance of the order was already in the employ of the defendants, and the very controversy arose out of the

14

continuance in employment of said Amelia Greenwood, it is apparent that the result intended to be accomplished by the issuance of said order was the compulsory release of said Amelia Greenwood from employment by the defendants. In short, the order directed and commanded the defendants to discharge said employee." (*Id.* at p. 27, italics omitted; see also *Agricultural Labor Relations Bd. v. Superior Court* (1983) 149 Cal.App.3d 709, 713 [order that agricultural employer discontinue replacement workers' employment until all strikers were rehired was mandatory under *Feinberg* because it required employer "to take affirmative action by terminating present employees"].)

Similarly, in cases involving contractual duties, the Courts of Appeal have deemed injunctions mandatory because they required the defendant to act contrary to her contractual obligations at the time the order was made, thereby altering the status quo. (*Paramount Pictures Corp. v. Davis, supra,* 228 Cal.App.2d at p. 838 [order that actress Bette Davis appear for additional filming for Paramount while under contract to Aldrich for another film was a mandatory injunction; rather than "maintain the status quo as it existed at the time of its issuance," the order "compels defendant to violate her contract with Aldrich and to surrender a status and rights lawfully held by her at the time the injunction issued"]; *Ambrose v. Alioto* (1944) 62 Cal.App.2d 680, 686 [where defendant had contract to deliver fish to one cannery, order that she deliver to another was mandatory in that it "contemplates a change in the relative position or rights of the parties which existed at the time the decree was entered" (italics omitted)]; see also *URS Corp. v. Atkinson/Walsh Joint Venture, supra,* 15 Cal.App.5th at p. 884 [order is prohibitory " 'if its effect is to leave the parties

in the same position as they were prior to the entry of the judgment' "]; *Dosch v. King* (1961) 192 Cal.App.2d 800, 804 [order is mandatory if it "contemplates a change in the relative rights of the parties at the time injunction is granted"].)

In each case, the court considered whether the order was mandatory by reference to the position of the parties at the time the injunction was entered, and declined to require the defendant to take affirmative steps to remedy an adjudged violation of law until the correctness of the judgment had been considered on appeal. In the general run of cases, this approach makes sense, given the doctrine's overarching concern with avoiding injuries "from the premature enforcement of a determination which may later be found to have been wrong." (*Scripps-Howard Radio v. Comm'n, supra*, 316 U.S. at p. 9.) If the appeal is successful, freezing conditions from the time the injunction issues assures that the defendant will get the full benefit of his or her success and will not be compelled to take remedial steps the law never in fact required; if the appeal is unsuccessful, the plaintiff will typically be no worse off than if no appeal had been taken.[7]

In other cases, however, our cases have suggested a different point for measuring change in the parties' relative positions. We addressed this issue in *United Railroads v. Superior Court, supra*, 172 Cal. 80 (*United Railroads*). In that case, San Francisco had been operating its municipal street railway on facilities owned in part by United Railroads, which

---

[7] Typically, but not always; in some instances the equities might support immediate enforcement of even a mandatory injunction, though existing California law prescribes an automatic stay. More on this in part III., *post*.

claimed the city was running more cars than their agreement allowed. (*Id.* at pp. 81–82.) United Railroads obtained an injunction pendente lite "requiring the defendant to desist and refrain from operating this excess number of cars upon the tracks and around the loops." (*Id.* at p. 82.) San Francisco appealed, and the question arose whether the injunction was automatically stayed pending the appeal as a mandatory injunction. (*Ibid.*)

We answered no. On its face, we noted, the injunction "would appear to be an order to defendant to stop doing something, not to compel it to do something else, and no more mandatory in character than an order telling a man to desist from throwing his rubbish in his neighbor's vacant lot." (*United Railroads*, *supra*, 172 Cal. at p. 84.) But San Francisco argued the injunction was "mandatory in effect" (*ibid.*) because it compelled the city to give up a position held by right, "an interest in real property which can be enjoyed only by use, and the possession of which can be manifested only by running the cars over the tracks" (*id* at p. 86). San Francisco urged, that is, that maintaining the status quo during the pendency of the litigation required allowing the city to continue its disputed usage of the tracks.

We rejected San Francisco's argument as inconsistent with the principle that equity may be invoked to prevent repeated trespasses. (*United Railroads*, *supra*, 172 Cal. at pp. 86–87.) We went on to add: "There is no magic in the phrase 'maintaining the *status quo*' which transforms an injunction essentially prohibitive into an injunction essentially mandatory. The phrase is commonly employed in discussing mandatory injunctions compelling the surrender of possession of realty by the actual peaceable occupant at the time the injunction has

been secured.  Indeed, the phrase has been defined to mean 'the last actual peaceable, uncontested status which preceded the pending controversy.'  There was no such uncontested possession here.  It is undisputed that petitioner protested before beginning its action, protested vigorously against the misuse of its property, and only brought its action when its protests were disregarded." (*Id.* at p. 87.)  We observed, finally, that there was no stopping point to San Francisco's argument: "If this be a mandatory injunction, then must every injunction restraining waste and trespass be equally mandatory." (*Id.* at p. 90.)

A concurring justice explained the matter succinctly:  "The fact that the defendant had for some time been enjoying its asserted right to so run cars does not change the character of the order.  If this were not so, almost any injunction against the doing of repeated acts would be mandatory if the performance of the acts had begun and been carried on for any considerable time prior to the application for the injunction." (*United Railroads*, *supra*, 172 Cal. at p. 91 (conc. opn. of Sloss, J.).)

In this discussion, our opinion in *United Railroads* introduced a different baseline for measuring the status quo. We explained that the status quo relevant in that case was not that prevailing at the time of the injunction — i.e., when San Francisco had already begun its disputed use of the tracks and sought to keep going — but an earlier " 'actual peaceable, uncontested status which preceded the pending controversy.' " (*United Railroads*, *supra*, 172 Cal. at p. 87.)  Courts have since repeated that formulation in other cases.  (See *People v. Hill* (1977) 66 Cal.App.3d 320, 331 [order restraining defendant from using certain allegedly deceptive professional terms in business held to preserve the status quo under *United Railroads*

formulation: "The pleadings clearly indicate a long history of appellant's contested use of the words 'accountant' and 'accountancy.' The status quo to be established is that which existed before appellant started using the prohibited words"].)

*United Railroads* thus naturally raises the question where the proper baseline should be fixed. Should courts measure the status quo from the time the order is entered, as *Foster*, *Clute* and other cases hold, or instead from the " 'last actual peaceable, uncontested status which preceded the pending controversy' " (*United Railroads*, *supra*, 172 Cal. at p. 87)?

To answer the question requires us to consider the particular circumstance addressed in *United Railroads*. Our decision in that case recognizes that in some instances, an injunction that is essentially prohibitory in nature may involve some adjustment of the parties' respective rights to ensure the defendant desists from a pattern of unlawful conduct. This is bound to be true when the defendant attempts to convert its contested conduct into something resembling a property right, as San Francisco did when it insisted on continuing to run excess trains on the plaintiff's tracks. The *United Railroads* decision makes clear that an injunction preventing the defendant from committing additional violations of the law may not be recharacterized as mandatory merely because it requires the defendant to abandon a course of repeated conduct as to which the defendant asserts a right of some sort. In such cases, the essentially prohibitory character of the order can be seen more clearly by measuring the status quo from the time before the contested conduct began.

But *United Railroads* did not address an order like the ones issued in *Clute* or *Paramount Pictures*, in which the

injunctive order aims not to prevent injury from future conduct but instead offers a remedy for a past violation. To the extent a remedial order calls for the performance of an affirmative act — ripping out a building or other improvement (*Kettenhofen v. Superior Court*, *supra*, 55 Cal.2d at pp. 190–191), say, or firing one worker and rehiring another (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 149 Cal.App.3d at p. 713) — our cases have not understood *United Railroads* to mean the order is merely prohibitory, and therefore enforceable while an appeal is pending, because it would return the parties to the " 'last actual peaceable, uncontested status' " that existed before the property dispute ever arose. (*United Railroads*, *supra*, 172 Cal. at p. 87.) Our cases have instead adhered to the rule that such orders are mandatory, and thus automatically stayed while an appellate court determines whether the order is legally correct.

**B.**

With these principles and precedents in mind, we turn to the proper characterization of the order in this case.

On its face, the superior court's order that the Board "[r]escind the appointment of Rowe as Third District Supervisor" and "[i]mmediately seat any person duly appointed to the position of Third District Supervisor by the Governor" fits the description of a mandatory injunction. Although it is true that in some cases an order that appears facially mandatory may prove to be prohibitory "in essence and effect" (*Kettenhofen v. Superior Court*, *supra*, 55 Cal.2d at p. 191), this is not such a case. What the order says on its face is also what it does in practice: namely, require the Board to perform affirmative acts that, once performed, will change the relative position of the

parties by ousting Rowe from her position so that a replacement can be seated.

Resisting this conclusion, plaintiffs offer a series of arguments for characterizing the order as merely prohibitory in nature. They first briefly argue that the facially mandatory aspects of the superior court's judgment — ousting Rowe and seating her replacement — were merely incidental to parts of the judgment declaring Rowe's appointment null and void as a violation of the Brown Act, barring her from participating in Board meetings or actions, and restraining the Board from making any other appointment to the position. Plaintiffs' argument draws on our observation in *United Railroads*, *supra*, 172 Cal. at page 88, that "the character of a prohibitive injunction [is] not transformed and made mandatory because it incidentally involved the doing of an affirmative act." The observation in *United Railroads* remains true, as far as it goes. For example, an order prohibiting a defendant from using a particular trade name might incidentally require the defendant to remove the name from its signage; the incidental steps required to take the trade name out of circulation does not convert what is essentially a prohibitory injunction into a mandatory one. (See *Jaynes v. Weickman* (1921) 51 Cal.App. 696, 699–700; see also *People v. Mobile Magic Sales, Inc.* (1979) 96 Cal.App.3d 1, 5 [defendant was ordered to refrain from displaying mobilehome models for sale at a mobilehome park; requiring the defendant to remove the mobilehomes currently on display did not render the injunction mandatory].) But here, the requirement to remove Rowe from the Third District supervisor position and seat the Governor's replacement cannot plausibly be described as merely incidental to other aspects of the order; it was not a necessary means to a prohibitory end, but

the end in itself.[8]   Under the circumstances, any prohibitory elements in the order might better be described as incidental to the mandatory, rather than vice versa.[9]

Plaintiffs' second and more central contention is that rescission of Rowe's appointment merely returns the parties to the positions they occupied before the Board engaged in the challenged appointment process, consistent with the teaching of *United Railroads*.  Of course, a true return to precontroversy conditions presumably would leave the Board free to make a new appointment rather than being compelled to accept a replacement named by the Governor.  But even setting that point aside, we reject plaintiffs' argument as inconsistent with California law concerning stays of injunction pending appeal.

As we have explained, *United Railroads* addressed situations in which the injunction being appealed restrains the defendant from repeating its unlawful conduct, while simultaneously requiring some adjustment of the parties'

---

[8]   To the extent plaintiffs attempt to characterize these mandatory orders as incidental in the sense that they merely implemented the court's finding that the Board's appointment of Rowe was null and void, the argument proves too much.  In that sense, virtually every remedial order could be characterized as incidental to the underlying legal violation on which it is based.

[9]   We note as well that Rowe's removal is clearly not incidental in any sense to plaintiffs, who asked the superior court not only to declare the appointment void but to order it rescinded and the Governor's appointee seated.  In this court, moreover, plaintiffs have made clear that one of their central concerns is whether Rowe would be permitted to continue occupying the seat, and thus claim incumbent status on the ballot in the Third District supervisor election, despite the alleged defect in the process that led to her appointment.

respective rights, such as an abridgment of the defendant's claimed property right in continuing its challenged conduct. (See pt. II.A., *ante*; *United Railroads*, *supra*, 172 Cal. at p. 91 (conc. opn. of Sloss, J.); accord, *Jaynes v. Weickman*, *supra*, 51 Cal.App. at p. 699 [citing *United Railroads* for the proposition that "[a]n injunction that restrains the continuance of an act or series of acts may be just as much a preventive or prohibitory injunction as one that restrains the commission of an act"].) That is not the situation here. The order on appeal here required the Board not to refrain from repeating its Brown Act violation, but rather to take affirmative action to undo the violation's effect, that is, to rescind Rowe's appointment and to seat another in her place.

Like other injunctions our courts have deemed mandatory, the order that the Board replace Rowe with a gubernatorial appointment goes beyond restraint to demand affirmative acts, changing the status quo at the time the injunction was issued. In *Foster*, *supra*, 115 Cal. at page 281, for example, the trial court found one candidate, Smith, to have been elected to a corporate board and ordered the board president not to interfere with his exercise of the office. We held that the order, "[a]lthough preventive in form, . . . was, in effect, mandatory, as it required [the president] and the other directors to recognize Smith as one of their number, and to refuse to recognize [a competing candidate]," thereby "chang[ing] the relative positions of the parties from those existing at the time the decree was entered." (*Id.* at p. 284.) The order in *Foster*, like the one in this case, required the defendants to refuse their approved candidate and instead accept a different individual (in this case, the Governor's appointee). The order was found to be mandatory because it did not restrain the defendants from

repeating their violation but instead mandated that they take affirmative action — seating a different candidate — to undo a past act found to be unlawful. (See also *Ambrose v. Alioto*, *supra*, 62 Cal.App.2d at p. 686 [order that catch be delivered to one cannery rather than another "compels the performance of a substantive act"].)

The *United Railroads* defendant proposed using the preservation of the precontroversy status quo as a basis to "transform[] an injunction essentially prohibitive into an injunction essentially mandatory," a proposal we there rejected. (*United Railroads*, *supra*, 172 Cal. at p. 87.) Here, plaintiffs invoke *United Railroads* with precisely the opposite aim. If *United Railroads* were understood as plaintiffs suggest, then the decision would all but negate the basic rule to which California courts, applying statutory law, have adhered since 1857: that the defendant's perfection of an appeal results in the stay of a mandatory injunction against the defendant.

A brief review of the mandatory injunction cases will suffice to demonstrate the point. In *Byington v. Superior Court*, *supra*, 14 Cal.2d 68, for example, where San Francisco had been ordered not to take Tuolumne River water above the amount of its prescriptive right, and had violated that order by taking additional water to fill an enlarged Hetch Hetchy Reservoir, we held the order a mandatory injunction because it required the city to surrender a property right (an appropriative water right) it allegedly held at the time the order was made. (*Id.* at pp. 69–70, 72–73.) If we had instead concluded that the status quo were properly measured by reference to conditions preceding the controversial acts that gave rise to the litigation, then we should instead have deemed the order prohibitory, as it merely returned the parties to their positions before San Francisco

began storing the extra water, and allowed it to take effect pending the decision on appeal.[10]

---

[10] We acknowledge that the proper characterization of the injunction at issue in *Byington* is not free from ambiguity. Rather than view the trial court's order there as requiring the affirmative abandonment of a property right, we might with equal plausibility have characterized it as restraining San Francisco from repeating its allegedly unlawful conduct of storing excess water — much as the city in *United Railroads* had been ordered to stop running excess trains on the plaintiff's tracks. That we did not characterize the injunction that way may have had something to do with the fact that the city had prevailed on the merits in an intervening decision on appeal. (See *Byington v. Superior Court, supra*, 14 Cal.2d at pp. 72–73; see *Meridian, Ltd., v. San Francisco* (1939) 13 Cal.2d 424, 459–460 [modifying the trial court's order].)

*Byington* is not the sole example of this type of ambiguity. In *Clute*, for example, we might plausibly have characterized the injunction as merely restraining the defendant from continuing to act unlawfully as manager and treasurer of the hotel, rather than as ousting the defendant from a possessory interest in the hotel and its associated personal property. (*Clute, supra*, 155 Cal. at pp. 17, 19–20.)

We mention these ambiguities not to suggest that either of these decisions was wrongly decided, but only to illustrate the difficulties of application inherent in our traditional mandatory/prohibitory distinction, difficulties that contribute to our belief this area of the law may be ripe for reconsideration or legislative reform. (See pt. III., *post.*)

The point remains, however, that the outcome in *Byington* would certainly have been different had we understood the question before us solely in terms of whether the injunction returned the parties to the last actual, peaceable status preceding the controversy, as opposed to asking more broadly whether the injunction effectively preserved the status quo pending appeal.

Similarly, in *Paramount Pictures Corp. v. Davis*, *supra*, 228 Cal.App.2d 827, the appellate court held a preliminary injunction ordering Bette Davis to return to the Paramount studios and perform an additional day's filming on one movie (Where Love Has Gone) — at a time when Davis was already engaged in filming another movie (Hush, Hush Sweet Charlotte) for another company — was mandatory rather than prohibitory because it commanded Davis to take affirmative action. (*Id.* at p. 838.) Had the court decided to answer this question based solely on whether an additional day's worth of Where Love Has Gone filming would return the parties to the state of affairs that existed before Davis signed her conflicting contract with the other movie studio, the court surely would have reached a different result.

Or to take one final example, consider an order directing an employer to fire replacement workers and rehire strikers. (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 149 Cal.App.3d at p. 713.) The Court of Appeal labeled the order mandatory, and therefore automatically stayed on appeal, because it commanded the employer to take affirmative steps to remedy an alleged legal violation. Again, if the question were instead merely whether the order restored the status quo preceding the challenged acts, the answer would have been different; the injunction would have been considered prohibitory, and the employer would have been required to take affirmative steps to remedy an alleged violation before the appellate court had determined whether there was a violation to remedy.

California law has long taken a different approach to such matters, under which the usual default rule of stay pending appeal extends to mandatory orders requiring the defendant to

undertake an affirmative act. Our decision in *United Railroads* was not meant to, and did not, upend this settled law. In the cases cited above, the injunction was essentially mandatory in that it commanded the performance of affirmative acts to remedy a violation while the legal basis for that remedy was still subject to appellate review. So too here.

Plaintiffs next argue that because Rowe's appointment was declared void by the superior court, she never lawfully held the seat, and the order that her appointment be rescinded made no change to the status quo. We rejected a similar argument in *Clute*. The corporation that owned the hotel argued it "was at all times entitled to the possession and in the actual possession of the hotel and its contents, and a surrender of the custody by one employee to another authorized to receive it leaves the *status* of the property, so far as possession is concerned, unaltered." (*Clute*, *supra*, 155 Cal. at p. 19.) But that argument, we explained, "fails to take into account the very point that was in dispute in the court below," that is, the propriety of Clute's ouster as manager. (*Ibid.*) Plaintiffs' argument similarly ignores that the central points in dispute in the superior court and on appeal concern the validity of Rowe's appointment and the superior court's power to nullify it in this action. The goal of a stay is to preserve the status quo while a court determines the merits of the appeal; issuance of the stay cannot depend on the assumption that the appeal will fail.

Finally, plaintiffs worry that automatically staying orders that require the defendant to unwind the effects of a Brown Act violation, like the order at issue in this case, will "undermine the Brown Act's force by permitting violating agencies to enjoy the fruits of their violations during the pendency of any appeal." The worry is misplaced. For one thing, our holding here states

no general rule as to the stay of orders remedying violations of the Brown Act; we here have considered only one order prescribing one particular set of remedies for an alleged violation involving a challenge to the legitimacy of a public official's claim to office. That order, as we have seen, centrally included commands for affirmative acts, going well beyond preventing the Board from "enjoy[ing] the fruits" of the violation. But even as to orders removing a public officer because of a Brown Act violation, plaintiffs' concerns are overstated. Code of Civil Procedure section 803, which implements the common law writ of quo warranto in California, authorizes the Attorney General or a relator acting with that officer's consent to seek the ouster of a person unlawfully holding office. In general, this procedure is the exclusive means to try the title of a person occupying a public office (see *Stout v. Democratic County Central Com.* (1952) 40 Cal.2d 91, 93; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225). And when judgment is rendered in favor of the challengers, the judgment is not subject to automatic stay on appeal. (Code Civ. Proc., § 917.8, subd. (a).)

The parties vigorously dispute whether quo warranto was the exclusive remedy available here. But even if it was not the exclusive remedy, it was at least an available remedy. (See *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 470 ["The availability of other statutory remedies ordinarily does not foreclose a proceeding in the nature of quo warranto by the Attorney General."]; cf. 97 Ops.Cal.Atty.Gen. 12 (2014) [2014 WL 1218410, p.*6] [where quo warranto action was authorized by Attorney General on other grounds, Brown Act claim may also be resolved in the

action].)[11]   Had plaintiffs proceeded by quo warranto and prevailed on the merits, they would have obtained an immediately enforceable judgment that Rowe "be excluded from the office." (Code Civ. Proc., § 809.)  They did not proceed by quo warranto, however, and so enforcement of the superior court's order must await review of the judgment on appeal.

## III.

We have concluded that under the settled law of California, the order in this case was automatically stayed as a mandatory injunction.  Neither party has asked us to eliminate or revise the automatic stay rule governing injunctions — or the automatic stay rule more generally, for that matter.  And given the rule's long tenure in our jurisprudence and its statutory roots (first in § 356 of the 1851 Practice Act, then in Code Civ. Proc., former § 949, and currently in Code Civ. Proc., § 916), the scope of our authority to do so absent statutory amendment is uncertain.  (Cf. *Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 149 Cal.App.3d at pp. 716–717 [Code Civ. Proc., § 916 applies to a mandatory injunction notwithstanding absence of reference to it in statute authorizing the injunction; Legislature was presumably aware of California's long-standing automatic stay rule when enacting statute providing for

---

[11]   As stated earlier, we need not decide here whether Government Code section 54960.1, by specifying a mandamus remedy for violations of the Brown Act, creates an exception to the rule of quo warranto exclusivity.  We also do not address here whether an action under Code of Civil Procedure section 803 based on a Brown Act violation would need to meet any of the procedural prerequisites of a mandate petition brought under Government Code section 54960.1, or whether proceedings under the two statutes might be consolidated or coordinated.

injunctive relief].)  We nevertheless pause briefly here to reflect on this area of our procedural law, which we have not addressed in many years, and to suggest an area that may be ripe for reexamination.

As noted earlier, our cases have long recognized that the mandatory-prohibitory distinction can prove challenging to apply.  It is not always easy to distinguish a restraint from a command, or vice versa.  There are no magic words that will distinguish the one from the other; the cases recognize that " 'an order entirely negative or prohibitory in form may prove upon analysis to be mandatory and affirmative in essence and effect.' " (*URS Corp. v. Atkinson/Walsh Joint Venture*, *supra*, 15 Cal.App.5th at p. 884, quoting *Kettenhofen v. Superior Court*, *supra*, 55 Cal.2d at p. 191.)  And in some cases, the injunction will plausibly be characterized as involving both restraint and command.  The same order may, for example, be characterized as simply prohibiting the defendant from repeating conduct the trial court has found unlawful, or as mandating that the defendant act affirmatively to surrender a right or a position occupied under a claim of right.  (See fn. 10, *ante*.)

But problems of characterization aside, the mandatory/prohibitory distinction also appears imperfectly aligned with the equitable considerations relevant to the question of staying an order pending appeal.  (See *People ex rel. S. F. Bay etc. Com. v. Town of Emeryville*, *supra*, 69 Cal.2d at p. 537 [courts seek to do "justice" in issuing stays pending appeal, considering "the relative hardships on the parties" and "the likelihood that substantial questions will be raised on appeal"].)  There is reason to doubt a strict application of the rule automatically staying mandatory injunctions will produce the most just result in all cases.  Because an appeal can take a

substantial time to resolve, and because during that time the plaintiff may, in some cases, be significantly injured by the maintenance of the status quo, an automatic stay will not always be fair to prevailing plaintiffs with strong cases that are likely to be upheld on appeal.[12]  A more flexible approach that permitted the trial and appellate courts to weigh the likelihood of each party's success on appeal and the extent of irreparable injury each will suffer from the stay decision would allow courts to make more sensitive, case-specific judgments about whether the equities favor the stay of an injunctive order pending appeal.

Many jurisdictions provide courts with equitable discretion of this nature.  Federal courts employ a four-part analysis that considers the likelihood of success on the merits as well as the types and extent of injuries, private and public, that may result from either course (stay or no stay).  (*Hilton v. Braunskill* (1987) 481 U.S. 770, 776.)[13]  New York law

---

[12]  See Lee, *Preliminary Injunctions and the Status Quo* (2001) 58 Wash. & Lee L.Rev. 109, 161 (noting, in the related area of rules governing issuance of preliminary injunctions, that "it may be that injunctions preserving the status quo are more likely to minimize irreparable harm, while injunctions upsetting the status quo tend to multiply such harms.  But clearly there are exceptions to this 'rule' ").  Our general observation should not, of course, be taken as a reflection on the equities of the present case.

[13]  "Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a).  Under both Rules, however, the factors regulating the issuance of a stay are generally the same:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a

establishes a set of presumptions favoring stays on appeal but allows courts the discretion to refuse or limit them in individual cases. (N.Y. C.P.L.R. § 5519.)[14] Oregon law employs a test for discretionary trial court stays similar to the federal test (Or. Rev. Stat. Ann. § 19.350(3)) and allows the appellate courts to vacate or modify stays issued by the trial courts as well as to issue their own stays. (*Id.*, § 19.360(4).) New Jersey case law holds that in order to obtain a stay pending appeal of a trial court's order, the moving party "must demonstrate that (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the 'relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were.' " (*Garden State Equality v. Dow* (2013) 216 N.J. 314, 320.) In Washington, similarly, "[w]hether a stay pending appeal should be granted depends on (1) whether the issue presented by the appeal is debatable, and (2) whether a stay is necessary to preserve for the movant the

---

stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (*Hilton v. Braunskill, supra*, 481 U.S. at p. 776.)

[14] New York continues to follow the rule that mandatory injunctions fall within the automatic stay provisions, while prohibitory injunctions are considered self-executing, serve to maintain the status quo, and therefore are not automatically stayed. (*State of New York v. Town of Haverstraw* (N.Y.App.Div. 1996) 219 A.D.2d 64, 65.) But unlike California, New York empowers the appellate court to "vacate, limit or modify any stay" imposed under the statute's automatic provisions, including stays of mandatory injunctions. (N.Y. C.P.L.R. § 5519(c).)

fruits of a successful appeal, considering the equities of the situation." (*Purser v. Rahm* (1985) 104 Wash.2d 159, 177.)

In contrast, California statutes provide both trial and appellate courts general discretion (subject to certain statutory limits) to stay orders, including injunctions (Code Civ. Proc., §§ 918, 923), but do not appear to authorize the general exercise of equitable discretion to countermand or modify the stay of an injunction imposed automatically under Code of Civil Procedure section 916.[15] (An exception, noted earlier, is Code of Civil Procedure section 1110b, which authorizes a court to leave a writ of mandate unstayed when the stay would cause the plaintiff "irreparable damage in his business or profession.") In cases where the trial court's order has not automatically been stayed, California appellate courts engage in a balancing of the equities in deciding whether to issue a writ of supersedeas pursuant to Code of Civil Procedure section 923. (*People ex rel. S. F. Bay etc. Com. v. Town of Emeryville*, *supra*, 69 Cal.2d at p. 537; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶¶ 7:279 to 7:281, pp. 7-79 to 7-80.) Given the essentially equitable nature of the stay pending

---

[15] Some courts have suggested the provision of Code of Civil Procedure section 923 authorizing an appellate court to "make any order appropriate to preserve . . . the effectiveness of the judgment subsequently to be entered" might empower the appellate court to vacate or modify a stay of the trial court's order in some circumstances. (See *Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 149 Cal.App.3d at p. 719 [suggesting Code Civ. Proc., § 923 might be employed in this manner "to prevent final ALRB actions from being mooted by events"].) Limited as it is to orders aimed at preserving the effectiveness of the court's judgment, however, that clause has not been construed as a general warrant for undoing automatic stays of mandatory injunctions on equitable grounds.

appeal, it would seem to make sense for both trial and appellate courts to have the same authority to order, when justice demands it, that a mandatory injunction take effect notwithstanding the filing of an appeal from the injunctive order. This issue is beyond the scope of the questions presented and briefed in this case for our review, so we do not answer it here. But the Legislature may always, if it chooses, reexamine California's statutory law governing stays pending appeal and decide whether the law would be better served by an approach that permits courts to take account of a wider array of equitable considerations than does present law.

## IV.

The superior court's order requiring the Board to rescind its appointment of Rowe as a supervisor and to instead seat an appointee named by the Governor was subject to an automatic stay of enforcement pending the Board and Rowe's appeal on the merits. (Code Civ. Proc., § 916, subd. (a).) The Board and Rowe were entitled to a writ of supersedeas effectuating such a stay. We therefore reverse the Court of Appeal's order denying the writ and remand for further proceedings consistent with our opinion. The stay of proceedings previously issued by this court is dissolved.

**KRUGER, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Daly v. San Bernardino County Board of Supervisors

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP order filed 1/8/20 – 4th Dist., Div. 2
**Rehearing Granted**


_____

**Opinion No.** S260209
**Date Filed:** August 9, 2021

_____

**Court:**  Superior
**County:** San Bernardino
**Judge:** Janet M. Frangie


_____

**Counsel:**

Meyers, Nave, Riback, Silver & Wilson, Deborah J. Fox, T. Steven Burke, Jr., Matthew B. Nazareth; Michelle D. Blakemore, County Counsel, and Penny Alexander-Kelley, Chief Assistant County Counsel, for Defendants and Appellants and for Real Party in Interest and Appellant.

McDermott Will & Emery, William P. Donovan, Jr., and Jason D. Strabo for Real Party in Interest and Appellant.

Jarvis, Fay & Gibson, Alexandra Barnhill and Gabriel McWhirter for League of California Cities as Amicus Curiae on behalf of Defendants and Appellants and for Real Party in Interest and Appellant.

James R. Williams, County Counsel (Santa Clara), Karun Tilak and Stephanie L. Safdi, Deputy County Counsel, for California State Association of Counties as Amicus Curiae on behalf of Defendants and Appellants and for Real Party in Interest and Appellant.

Altshuler Berzon, Stacey Leyton, Hunter B. Thomson; Rothner, Segall & Greenstone, Glenn Rothner and Juhyung Harold Lee for Plaintiffs and Respondents.

David Snyder, Glen Smith; Davis Wright Tremaine and Thomas R. Burke for First Amendment Coalition as Amicus Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Deborah J. Fox
Meyers, Nave, Riback, Silver & Wilson
707 Wilshire Boulevard, 24th Floor
Los Angeles, CA 90017
(213) 626-2906

Glenn Rothner
Rothner, Segall & Greenstone
510 South Marengo Avenue
Pasadena, CA 91101
(626) 796-7555